**Lee N. STERNAL, Plaintiff–Appellant,**

v.

**Renny FAGAN, as the Executive Director for the Colorado Department of Revenue, Defendant–Appellee.**

**No. 98CA0171.**

Colorado Court of Appeals, Div. III.

April 15, 1999.

Rehearing Denied May 20, 1999.

Certiorari Denied Nov. 29, 1999.

Lee N. Sternal, Pro Se.

Gale A. Norton, Attorney General, Martha Phillips Allbright, Chief Deputy Attorney General, Richard A. Westfall, Solicitor General, Carolyn Lievers, Assistant Attorney General, Denver, Colorado, for Defendant–Appellee.

Opinion by Judge JONES.

In this tax refund dispute, plaintiff, Lee Sternal, appeals pro se from the trial court's order determining that he did not qualify for a trade-in allowance credit from defendant, Renny Fagan, as the Executive Director of the Colorado Department of Revenue. We affirm.

Plaintiff's claim for the tax credit arises from the purchase of an automobile and the separate sale of a different automobile. In February 1994, plaintiff entered into a contract with his brother-in-law, whereupon it was agreed that, after he had purchased a 1991 Audi automobile from a dealership in Minnesota, he would sell the brother-in-law his 1986 Audi automobile. Later that month, plaintiff purchased a 1991 Audi in Minnesota for $22,900, and, thereafter, sold his 1986 Audi to his brother-in-law for $5,500.

When plaintiff registered his new car in Colorado, he told the clerk that the net purchase price of the automobile was $17,400, which represented the $22,900 purchase price of the new Audi less the $5,500 sale proceeds from the old Audi. However, when plaintiff presented the car's title from Minnesota, the clerk required him to pay taxes on the full purchase price, rather than his calculated net purchase amount. Plaintiff paid the additional taxes under protest and filed a claim for a refund in the amount of $220. Plaintiff's claim for a refund was later granted.

However, plaintiff subsequently received a deficiency notice in the amount of $220 from defendant, which caused him to initiate an administrative proceeding seeking review of the determination of deficiency. Defendant denied plaintiff's request after concluding that plaintiff was not entitled to a trade-in allowance credit.

Consequently, plaintiff sought de novo review of defendant's order in district court, arguing that he was entitled to a trade-in allowance credit pursuant to § 39–21–104 C.R.S.1998, and, therefore, should only be taxed on the net purchase amount of the new

car. The trial court disagreed, finding that plaintiff did not meet the statutory requirements for an exemption. Plaintiff now appeals from the trial court's order.

## I.

Plaintiff first contends that the trial court erred in failing to determine that the plain language of § 39–26–104, C.R.S.1998, contemplates a tax credit under the factual circumstances here. We disagree.

Section 39–26–104 allows for a reduction in the taxable value of a vehicle if the vehicle purchased is "exchanged for another vehicle." Specifically, this section states, in relevant part:

*Property and Services taxed.*

(1) There is levied and there shall be collected and paid a tax in the amount stated in section 39–26–106 as follows:

. . . .

(b)(I) In the case of retail sales involving the exchange of property, on the purchase price paid or charged, including the fair market value of the property exchanged at the time and place of the exchange, excluding, however, from the consideration or purchase price, the fair market value of the exchanged property if:

. . . .

(B) Such exchanged property is a vehicle and is exchanged for another vehicle and both vehicles are subject to licensing, registration, or certification under the laws of this state, including ... vehicles operating upon public highways.

Sternal argues that his purchase of the new car and subsequent sale of his old car constituted an "exchange," as contemplated by this section, because he was replacing the older car with a newer model.

■ The trial court rejected this argument, finding, instead, that by using the word "exchange," the General Assembly had intended for the exemption to be applicable to those situations in which one vehicle is transferred to another person or entity as all or part of the purchase price of the other vehicle. Based on this interpretation, the trial court concluded that, because the transactions here were structured as separate cash transactions, the transactions, although related, did not involve an "exchange" of the old car as part of the purchase price of the new one. Hence, the trial court concluded that plaintiff had not met his burden of establishing the right to the tax exemption.

We agree with the trial court's construction of the word "exchange" as used in this statute.

■ Our primary task in construing a statute is to ascertain and give effect to the legislative purpose underlying it. To determine legislative intent we look first to the plain language employed by the General Assembly. *City of Westminster v. Dogan Construction Co., Inc.,* 930 P.2d 585 (Colo.1997). "Words and phrases should be given effect according to their plain and ordinary meaning, and 'we must choose a construction that serves the purpose of the legislative scheme, and must not strain to give language other than its plain meaning, unless the result is absurd.'" *Farmers Group, Inc. v. Williams,* 805 P.2d 419, 422 (Colo.1991)(quoting *Colorado Department of Social Services v. Board of County Commissioners,* 697 P.2d 1, 18 (Colo. 1985)).

■ The term "exchange" has not been defined in the statute at issue here or in any cases construing it. Therefore, we must look to the plain meaning of the word as it is used in the statute. Section 39–26–104(1)(b)(I), C.R.S.1998, uses the word exchange in the context of "retail sales involving the exchange of property" and "the fair market value of the property exchanged at the time and place of exchange." A plain reading of this language indicates that the General Assembly intended for the qualifying "exchange" to transpire in a single transaction, in which one vehicle is transferred to another person or entity as all or part of the purchase price of another vehicle. This interpretation is consistent with the common understanding of the word "exchange," which is defined as "the act of giving or taking one thing in return for another," or "the act of

substituting one thing for another." *Webster's New Collegiate Dictionary* 432 (9th Ed.1991).

In interpreting the word "exchange" in this manner, we, accordingly, reject plaintiff's contention that the language, "at the time and place of exchange," should be interpreted as the legislature's intention "to fix the value of the tax deduction with a value that would otherwise be subject to fluctuation if the physical transfer were to occur significantly after the execution of the agreement to transfer." We decline to interpret the statute to mean that which it does not express. *See Grogan v. Lutheran Medical Center, Inc.,* 950 P.2d 690 (Colo.App.1997) (a forced, subtle, or strained construction should be avoided if the language is simple and the meaning is clear).

We also reject plaintiff's contention that our interpretation results in unfair tax treatment of citizens who replace their automobiles in exchanges with private parties instead of through licensed automobile dealers. We see no disparity in the effect this interpretation has on private parties as compared to dealerships, for if a taxpayer were to purchase an automobile from a private party and were to transfer another vehicle to that party to set off all or part of the purchase price, that taxpayer would be entitled to the tax credit. Thus, the statute treats similarly situated private parties and dealerships alike.

Here, plaintiff chose to structure the purchase of the new automobile and sale of the old automobile as two distinct transactions, involving separate parties. The old vehicle was not directly transferred to a person or entity as part of the purchase price for the new vehicle and, therefore, plaintiff cannot qualify for the trade-in allowance credit under § 39–26–104(1)(b)(I).

## II.

 Next, we reject plaintiff's argument that he is entitled to the exemption under § 39–26–104 because the legislature did not intend the collected tax to be retained against a taxpayer in circumstances that demonstrate that the applicable tax was paid by another.

■ This argument is simply not supported by the law. When, as here, there are multiple transactions, each transaction at which an item is sold to a consumer at retail may be taxed. *See Bedford v. Hartman Brothers, Inc.,* 104 Colo. 190, 89 P.2d 584 (1939). Furthermore, there is no exemption in the statute expressing such intent and, therefore, we cannot presume one. *See A.B. Hirschfeld Press, Inc. v. City & County of Denver,* 806 P.2d 917 (Colo.1991)(exemptions from taxing scheme are not to be presumed, but must be clearly indicated by statutory language).

The order is affirmed.

Judge MARQUEZ and Judge ROY concur.