**Gayle BALL fka Gayle Peterson,
Plaintiff and Appellee,**

v.

**David PETERSON, Defendant
and Appellant.**

No. 950150–CA.

Court of Appeals of Utah.

Feb. 29, 1996.

Mark E. Wilkey and Christian J. Rowley, Salt Lake City, for Appellant.

J. Spencer Ball, Salt Lake City, for Appellee.

Before DAVIS, Associate P.J., and BENCH, and WILKINS, JJ.

## OPINION

WILKINS, Judge:

David Peterson appeals the district court's January 1995 Order Modifying Decree of Divorce and its Findings of Fact and Conclusions of Law. We affirm in part, and reverse and remand in part.

## BACKGROUND

Gayle Ball and David Peterson were married in August 1970 and divorced in November 1986. At the time of their divorce, they had six minor children between the ages of three and fifteen years: Clinton, Cameron, Patrice, Cynthia, Julianne, and Robert. The original Decree of Divorce, along with a subsequent Stipulation and Addendum to Decree of Divorce, divided marital property and awarded Ms. Ball custody of the children along with child support and alimony.

The district court entered an Order Modifying Decree of Divorce in February 1992, which established Mr. Peterson's monthly child support obligation at $1547, based on a split custody arrangement. Four minor children lived with Ms. Ball, and one minor child, Cameron, lived with Mr. Peterson. This new order did not address changes in Mr. Peterson's child support obligation when the children reached the age of majority. Less than one month after the February 1992 Order was entered, Cameron turned 18 years of age.

In August 1993, Cynthia moved from Ms. Ball's home to Mr. Peterson's home to live with her father on a permanent basis. In September 1993, Patrice turned 18 years of age. Mr. Peterson proportionately reduced the amount of child support he was paying Ms. Ball because he calculated that he owed child support for only two of the four children who had originally lived with Ms. Ball.

On December 2, 1993, Mr. Peterson filed a Petition to Modify his support obligation imposed by the February 1992 Order. He alleged that a material change of circumstances had occurred because Cameron and Patrice had turned 18 years of age and Cynthia had moved in with him.

Ms. Ball filed a Counterpetition to Modify the February 1992 Order on December 28, 1993. She alleged there had been a material change in Mr. Peterson's salary, warranting an increase in his child support obligation. According to Mr. Peterson, this was the first time Ms. Ball had asserted that he should have paid increased child support since Cameron turned 18 years of age in 1992.

In January 1995, following a trial held on the cross petitions, the district court entered an Order Modifying Decree of Divorce and Findings of Fact and Conclusions of Law. The court concluded that Mr. Peterson's monthly gross income had increased since the previous order from $10,500 to $14,583, and imputed a monthly gross income to Ms. Ball, based on minimum wage, of $732. Using these figures, the new order assessed Mr. Peterson's ongoing monthly child support ob-

ligation for the three remaining minor children at $1520, based on a split custody arrangement.

The new order also concluded Mr. Peterson was liable for unpaid child support arrearages dating from November 1991 to the end of August 1994, totaling $11,813.40. These arrearages were based in part on the assumption that Mr. Peterson should have continued to pay child support to Ms. Ball until Cameron and Patrice graduated from high school, rather than until they turned 18 years of age. The arrearages were also based in part on a credit Ms. Ball receives for medical insurance payments made by her new husband, and on the court's finding that Cynthia had lived with Mr. Peterson since August 1993.

## ISSUES ON APPEAL

Mr. Peterson appeals the district court's January 1995 Order and Findings and Conclusions. Mr. Peterson argues the district court erred in retroactively applying a 1994 amendment to section 78–45–7.10 of the Utah Code; by calculating his arrearages from when Cameron and Patrice graduated from high school, rather than when they reached 18 years of age; by retroactively applying its 1995 Order; and by crediting Ms. Ball for medical insurance premiums that are actually paid for by her new husband. Mr. Peterson also argues the court misapplied the law in concluding there had been "a material change of circumstances of at least 25%," and that the court failed to make findings to support its conclusions. On the other hand, Ms. Ball asks for attorney fees on appeal, claiming Mr. Peterson's arguments are frivolous.

■■■ "In reviewing child ... support proceedings, we accord substantial deference to the trial court's findings and give it considerable latitude in fashioning the appropriate relief." *Woodward v. Woodward*, 709 P.2d 393, 394 (Utah 1985). We will not disturb the district court's actions unless the court exceeded the limits of its permitted discretion. *Id.* However, we review the district court's decision for correctness to the extent it involves questions of statutory interpreta-

tion. *Utah Sign, Inc. v. Utah Dep't of Transp.*, 896 P.2d 632, 633 (Utah 1995).

## ANALYSIS

### A. Retroactive Application of 1994 Amendment

■■■ We agree with Mr. Peterson that the district court erred in retroactively applying the 1994 amendment to section 78–45–7.10 of the Utah Code. Before the 1994 amendment, this section required an automatic reduction of the base combined child support award when a child turned 18 years of age, Utah Code Ann. § 78–45–7.10(1) (Supp.1991); however, the 1994 amendment changed the automatic reduction time to "[w]hen a child becomes 18 years of age, or has graduated from high school during the child's normal and expected year of graduation, whichever occurs later," *id.* § 78–45–7.10(1) (Supp. 1994).

■■■ When an amendment is merely procedural and does not "enlarge, eliminate, or destroy vested or contractual rights," it may be applied retroactively. *Salt Lake Child & Family Therapy Clinic, Inc. v. Frederick*, 890 P.2d 1017, 1020 (Utah 1995) (citations omitted). However, when the change is substantive, where the new statute establishes "a primary right and duty which was not in existence at the time [this claim] arose," the statutory modification may not be applied retroactively. *Washington Nat'l Ins. Co. v. Sherwood Assocs.*, 795 P.2d 665, 669–70 (Utah App.1990) (citation omitted).

The 1994 amendment is substantive. The amendment affects when a parent's child support obligation legally ends, and thus it affects the child's substantive right to support. Therefore, the district court should not have applied this amendment retroactively.

This amendment became effective on July 1, 1994. Utah Code Ann. § 78–45–7.10 amendment notes (Supp.1995). Because both Cameron and Patrice reached majority before this amendment became effective, the district court should have imposed the automatic reduction for both children when they turned 18 years of age, rather than when they graduated from high school. In para-

graph 7 of its 1995 Order, the district court imposed the automatic reduction for Cameron beginning in June 1992, rather than in March 1992, when Cameron turned 18 years of age. In the same paragraph, the district court imposed the automatic reduction for Patrice beginning in June 1994, rather than in September 1993, when she turned 18 years of age.

Therefore, because the district court erred by retroactively applying the 1994 amendment to section 78–45–7.10, we reverse the district court's order to the extent this amendment was retroactively applied in the January 1995 Order, and remand for the court to impose the automatic reduction of the award, as explained in the former section 78–45–7.10, when Cameron and Patrice turned 18 years of age.

### B. Automatic Change in Support Obligation

Cameron, who was living with Mr. Peterson, turned 18 years of age on March 13, 1992. At that time, section 78–45–7.10 provided:

(1) When a child becomes 18 years of age the base combined child support award is automatically reduced to reflect the lower base combined child support obligation shown in the table for the remaining number of children due child support, unless otherwise provided in the child support order.

(2) The award may not be reduced by a per child amount derived from the base child support award originally ordered.

Utah Code Ann. § 78–45–7.10 (Supp.1991). Nothing in the district court's existing child support order addressed what would happen when one of the children turned 18 years of age. Therefore, section 78–45–7.10 applies to this case.

As reflected in paragraph 7 of the 1995 Order, the district court applied this statute in June 1992 when Cameron graduated from high school. As explained above, the district court should have applied this statute when Cameron turned 18 years of age in March 1992, not when he graduated from high school in June 1992. Because Cameron was the only child under Mr. Peterson's legal custody at that time, the application of section 78–45–7.10 to Cameron caused the Peterson's custody arrangement to change from split custody to sole custody. This change in the custody arrangement caused Mr. Peterson's monthly child support obligation to increase from $1547 to $1745, even though he was now supporting only four, rather than five children. Mr. Peterson argues that because section 78–45–7.10 contemplates a *reduction* in child support when a child reaches majority, it does not apply to situations such as his where application of the statute results in an *increase* of his monthly support obligation. However, Mr. Peterson misreads section 78–45–7.10.

■ Section 78–45–7.10 does not call for a reduction in a parent's total monthly child support obligation when a child reaches 18 years of age. Rather, the statute provides: "When a child becomes 18 years of age the base *combined* child support award is automatically reduced to reflect the lower base combined child support obligation shown in the table for the remaining number of children due support, unless otherwise provided in the child support order." *Id.* § 78–45–7.10(1) (emphasis added). Therefore, the statute requires that the automatic reduction occur in the base combined child support award, not in the total child support obligation of one parent.

The " '[b]ase child support award' means the award calculated using the guidelines before additions for uninsured medical expenses and work-related child care costs." *Id.* § 78–45–2(2). In other words, the monthly obligation listed on the statutory base combined child support obligation table, found after determining the monthly combined adjusted gross income and the number of children, is the "base combined child support obligation." *See id.* § 78–45–7.14. Whether the child support award is based on a sole custody, split custody, or joint physical custody arrangement, the base combined child support obligation is calculated by "[c]ombin[ing] the adjusted gross incomes of the parents and determin[ing] the base combined child support obligation using the base child support obligation table." *Id.* § 78–45–

7.7(2)(a) (explaining how to calculate total child support award except in cases of joint physical custody and split custody); *id.* § 78–45–7.8(1) (explaining how to calculate total child support award in cases of split custody); *id.* § 78–45–7.9(1) (explaining how to calculate total child support award in cases of joint physical custody). In each of these custody arrangements, only after the base combined child support obligation is calculated do the statutes give the different formulas for determining the total child support award for the particular custody arrangement. *See id.* §§ 78–45–7.7 to –7.9.

Therefore, it is the base combined child support award, not the total child support award, that is automatically reduced when a child reaches majority. *Id.* § 78–45–7.10. This award is automatically reduced when a child reaches majority because fewer children are owed child support; thus the dollar value drops to the number found under the column listing the revised, fewer number of children. *Id.*

■ Although Mr. Peterson does not appear to realize it, the base combined child support obligation *was* reduced when Cameron turned 18 years of age. The number of children to whom he owed support dropped from five to four, reducing the base combined child support obligation. This lesser total amount was then used to calculate Mr. Peterson's total child support obligation. Mr. Peterson's total child support obligation increased because the custody arrangement changed from split custody to sole custody, and the sole custody formula requires a higher monthly support obligation than the split custody formula. *Compare id.* § 78–45–7.7 (sole custody formula) *with id.* § 78–45–7.8 (split custody formula).

Therefore, because the language of these statutes clearly explains that it is the base combined child support obligation—not the total child support obligation of one parent—that decreases when a child reaches majority, we reject Mr. Peterson's argument regarding this issue and affirm the district court's application of section 78–45–7.10 inasmuch as it is consistent with this opinion and follows the statutory formula outlined in section 78–45–7.7.

■ We also reject Mr. Peterson's argument that because Ms. Ball accepted his child support payments without comment until she filed her counterpetition in December 1993, Ms. Ball is estopped from now claiming he should have paid her more support after Cameron turned 18 years of age. Ms. Ball's delay in claiming Mr. Peterson was making insufficient payments is not enough to estop her from seeking reimbursement for payments Mr. Peterson was legally obligated to make to his children. *See Baggs v. Anderson,* 528 P.2d 141, 143–44 (Utah 1974). *Cf. State ex rel. Parker v. Irizarry,* 893 P.2d 1107, 1109–10 (Utah App.), *cert. granted, Parker v. Irizarry,* 910 P.2d 425 (Utah 1995).

### C. Retroactivity of District Court's Order

■ Mr. Peterson argues that the district court erred by retroactively applying its 1995 Order. The retroactive application of child support orders is governed by section 30–3–10.6, which provides, as it provided at the time of trial:

> (1)(c) [Child support is] not subject to retroactive modification by this or any other jurisdiction, except as provided in Subsection (2).

> (2) A child ... support payment under a child support order may be modified with respect to any period during which a petition for modification is pending, *but only from the date notice of that petition* was given the obligee, if the obligor is the petitioner, or to the obligor, if the obligee is the petitioner.

Utah Code Ann. § 30–3–10.6(1) to (2) (1995) (emphasis added). *See also Karren v. State Dep't of Social Servs.,* 716 P.2d 810, 813 (Utah 1986) (stating "only prospective modification of a support obligation is proper"); *Brooks v. Brooks,* 881 P.2d 955, 960 (Utah App.1994) ("In no event may the [child support] award be retroactively increased beyond the period during which the modification petition was pending."). Therefore, the district court is prohibited from retroactively applying its modified order beyond the time Mr. Peterson received notice of Ms. Ball's counterpetition.

Mr. Peterson received notice of Ms. Ball's counterpetition on December 28, 1993, when she filed her counterpetition and the counterpetition was served on Mr. Peterson's counsel. Therefore, as required by section 30–3–10.6, we reverse the district court's order to the extent its modifications were retroactively applied beyond December 28, 1993. We reverse only those parts of the 1995 Order that modify the previous order. Therefore, Mr. Peterson must still pay arrearages he owed under the previous order, including arrearages under proper application of section 78–45–7.10, which automatically increased his total monthly child support obligation, as discussed in previous sections of this opinion.

However, we affirm any application of the district court's 1995 Order retroactive to December 28, 1993, when Mr. Peterson received notice of Ms. Ball's counterpetition. As this court has explained:

> The only substantive limitation on the trial court's discretion to retroactively modify a support award is that the modification can run "only from the date notice of [the] petition was given" to the adverse party. Beyond that, the statute grants to the trial court full discretion to decide when an increased award should be made effective.

*Crockett v. Crockett,* 836 P.2d 818, 820 (Utah App.1992) (interpreting section 30–3–10.6). We hold that the district court did not exceed the permitted range of its discretion to the extent it modified its prior order by the January 30, 1995 Order, for the period of time after Mr. Peterson received notice of Ms. Ball's counterpetition on December 28, 1993.

### D. Medical Insurance Credit

■ Mr. Peterson argues the district court erred in crediting Ms. Ball for "the children's portion of monthly medical and dental insurance premiums" that are actually paid for by Mr. Ball, Ms. Ball's new husband, rather than by Ms. Ball herself. Mr. Peterson argues "[t]he correct procedure for crediting medical insurance payments made by a parent is set forth in [section] 78–45–7.7 [of the Utah Code]." Section 78–45–7.7 provides "the children's portion of any monthly payments *made directly by each parent* for medical and dental insurance premiums" should be used to calculate each parent's child support obligation. Utah Code Ann. § 78–45–7.7(2)(b) (Supp.1991) (emphasis added). Mr. Peterson also quotes from the 1994 amendments to this chapter to clarify his point that the natural parent must be the one to pay the insurance premiums in order to receive the credit: "The order shall require each parent to share equally the out-of-pocket costs of the premium *actually paid by a parent for the children's portion of insurance." Id.* § 78–45–7.15(3) (Supp.1995) (emphasis added); *see Department of Social Servs. v. Higgs,* 656 P.2d 998, 1001 (Utah 1982) (holding "when the purpose of an amendment is to clarify the meaning of an earlier enactment, the amendment may be applied retroactively in pending actions").

Section 78–45–7.7 clearly requires a trial court to credit a parent who is obligated to pay child support for medical insurance premiums paid by that parent to insure the parties' children. Therefore, this statute would require the trial court to credit Ms. Ball for any insurance premiums she paid to provide the children with health insurance. However, section 78–45–7.7 simply does not address whether Ms. Ball may be credited for insurance premiums paid by Mr. Ball, the children's stepparent. Nevertheless, section 30–3–5 of the Utah Code does provide the trial court with the authority to grant Ms. Ball this disputed credit.

Section 30–3–5 provides that in a divorce proceeding, a trial court may make "equitable orders relating to the children, debts or obligations, and parties." Utah Code Ann. § 30–3–5(1) (Supp.1995); *see id.* § 30–3–5(3) (providing court with continuing jurisdiction to do the same). This includes orders relating to the health and dental care of the children. *See id.* §§ 30–3–5(1)(a) to (b), 30–3–5(3). Because the statutes relating to child support obligations do not address the situation of a third party providing for the insurance coverage, the trial court has broad discretion under section 30–3–5 to credit one or both parents, as the court deems equitable, for the coverage provided by the third party. *Cf. Burke v. Burke,* 733 P.2d 133, 134–35

(Utah 1987) (holding that section 30–3–5 "confer[s] broad discretion upon trial courts in the division of property").

 In this case, a third party, Mr. Ball, has provided medical insurance for the children through his health plan. Mr. Ball's decision to provide this medical coverage for Mr. Peterson's children is no doubt due to his marriage to Ms. Ball. Furthermore, Ms. Ball has thus found a way to meet her parental obligation, albeit indirectly, in a way that logically and efficiently meets her situation. Under such circumstances, crediting Ms. Ball for Mr. Ball's insurance coverage of the children comports with principles of equity.

In addition, allowing this credit encourages stepparents like Mr. Ball to provide their stepchildren with medical insurance. Not only is such a practice sound public policy, but it is also consistent with Utah statutory law, which requires stepparents like Mr. Ball to support their stepchildren. *See id.* § 78–45–4.1 (1992) ("A stepparent shall support a stepchild to the same extent that a natural or adoptive parent is required to support a child [during the marriage or common law relationship with the child's natural or adoptive parent]."); *id.* 78–45–4.3. We therefore hold that the trial court did not exceed the scope of its broad discretion in crediting Ms. Ball for insurance premiums paid by Mr. Ball for Mr. Peterson's children.

We note that Ms. Ball may be credited for only that portion of the insurance premium that actually paid for *Mr. Peterson's children's insurance*—not insurance for Mr. Ball's children of a previous marriage. *See id.* § 78–45–7.7 (Supp.1991) ("[T]he *children's portion* of any monthly payments made directly by each parent. . . ." (emphasis added)); *id.* § 78–45–7.15(4) (Supp.1995) ("The children's portion of the premium is a per capita share of the premium actually paid. The premium expense for the children shall be calculated by dividing the premium amount by the number of persons covered under the policy and multiplying the result by the number of children in the instant case."). Therefore, in affirming the credit given to Ms. Ball by the district court for insurance premiums paid by Mr. Ball, we affirm only inasmuch as Ms. Ball was credit-ed only for the portion of the insurance premiums that insured Mr. Peterson's children. Accordingly, we remand to the trial court to determine if Ms. Ball was credited for portions of the premium covering anyone other than Mr. Peterson's children.

### E. The District Court's Finding of a Material Change in Circumstances

Paragraph 8 of the district court's Findings of Fact and Conclusions of Law states:

> The Court finds that there has been a material change of circumstances of at least 25% and that a modification of the previous decree is in order effective as of September 1, 1994. The previous monthly gross income of the Defendant was found to be $10,500.00. The Court finds that the Defendant's monthly gross income is now $14,583.00, and that the monthly gross income for the Plaintiff shall be imputed to be at the minimum wage level.

Mr. Peterson argues the district court erred in concluding there had been a material change of circumstances. Mr. Peterson claims the district court erred because the court concluded a material change of circumstances had occurred as there was a 25% change in Mr. Peterson's income from the time of the previous order when compared with his current income. What the court should have examined, argues Mr. Peterson, is whether the increase of his income would produce a 25% difference in the child support award. Mr. Peterson argues that "if properly calculated, [his] support obligations under current guidelines do not vary by more than 25% from the previous support order."

 The Utah Code provides that there is a material change in circumstances "if there is a difference of at least 25% between the existing order and the guidelines." Utah Code Ann. § 78–45–7.2(6) (Supp.1991). Therefore, Mr. Peterson is correct in arguing that under this statute, the court should compare the amount of support under the existing order with the amount indicated by application of the guidelines, to determine if a difference of 25% exists, rather than deter-

mining if there has been a 25% increase in the obligor's income.

However, section 78–45–7.2(6) does not apply to Mr. Peterson. Mr. Peterson's monthly income of $14,583 is so high that the parties' monthly combined adjusted gross income is not listed on the child support obligation table. *See id.* § 78–45–7.14 (Supp. 1991) (listing $10,000 as highest monthly combined adjusted gross income listed); *id.* § 78–45–7.14 (Supp.1995) (listing $10,001 as highest monthly combined adjusted gross income listed). Therefore, it would be impossible for a court to determine whether a 25% difference existed between the previous order and the guidelines, as required by section 78–45–7.2.

In cases such as this, where the parties' monthly combined adjusted gross income exceeds the highest level specified in the statutory table, the court must decide whether there has been a substantial change in circumstances based on the common law. Under common law, a court may find a substantial change of circumstances warranting a modification of a child support award based solely on an increase in the obligor's income, which thereby enables him to provide greater support. *See Harrison v. Harrison,* 22 Utah 2d 180, 182, 450 P.2d 456, 457 (1969). The district court found that Mr. Peterson's monthly income had increased from $10,500 to $14,583, an increase of approximately 40%. Therefore, we do not find that the court exceeded the permitted range of its discretion in concluding that a substantial change of circumstances occurred.

F. Inadequacy of District Court's Findings

Mr. Peterson also argues "[t]he trial court erred by failing to make appropriate findings as to an 'appropriate and just' support amount, as required by Utah Code Ann. § 78–45–7.12, where the combined incomes of Peterson and Ball exceeded the highest level specified in the Child Support Guidelines." We agree.

At the time of trial, section 78–45–7.12 of the Utah Code provided: "If the combined adjusted gross income exceeds the highest level specified in the table, an appro-

priate and just child support amount may be ordered, but the amount ordered may not be less than the highest level specified in the table for the number of children due support." Utah Code Ann. § 78–45–7.12 (Supp. 1991). "Accordingly, under [this statute], the trial court had discretion to order 'an appropriate and just support amount,'" so long as it was not less than the highest level specified in the table for the number of children due support. *Baker v. Baker,* 866 P.2d 540, 545 (Utah App.1993).

The court declared the total monthly child support award in the following words: "Based upon the above figures [ (referring to Mr. Peterson's monthly gross income) ], child support should be awarded to [Ms. Ball] in the amount of $1,520.00 pursuant to the child support guidelines." It appears the trial court arrived at its total monthly child support award through linear extrapolation of the child support table. However, the court provided no findings—other than Mr. Peterson's income—to explain how it arrived at $1520.

We agree with Mr. Peterson that in cases such as his, where the parties' income exceeds the highest monthly combined adjusted gross income listed on the statutory table, linear extrapolation of the child support obligation table alone is not enough. Strict reliance on linear extrapolation would be erroneous, because taken to the extreme, a child could be awarded support vastly exceeding any reasonable need. Rather, a trial judge must consider and make specific findings on all "appropriate and just" factors. We conclude the trial court's findings are insufficient for us to determine whether the court exceeded the limits of its discretion. Accordingly, we remand for proper child support findings and an award consistent with those findings.

"Our holding should not be interpreted to mean that the trial court's decision as to the amount of child support is incorrect, but only that the court's findings of fact are insufficient to allow appellate review of the amount awarded." *Jefferies v. Jefferies,* 752 P.2d 909, 912 (Utah App.1988).

## G. Attorney Fees

The trial court did not grant Ms. Ball attorney fees below. Given our decision, we do not regard Mr. Peterson's appeal as frivolous. We therefore deny Ms. Ball's request for attorney fees on appeal.

## CONCLUSION

We affirm the district court's automatic change of Mr. Peterson's child support obligation as applied to Cameron to the extent it follows the statutory formula outlined in section 78–45–7.7, but reverse to the extent the court imposed this change based upon the date Cameron graduated from high school, and remand for the court to impose this automatic change when Cameron turned 18 years of age. We also reverse and remand the court's order for the purpose of making the necessary change to reflect the automatic decrease in Mr. Peterson's support obligation when Patrice turned 18 years of age, rather than when she graduated from high school.

In addition, we remand for modifications of the court's January 30, 1995 Order to eliminate any retroactive effect prior to December 28, 1993, when Mr. Peterson received notice of Ms. Ball's counterpetition, and reverse insofar as modifications were made to the court's previous order for the period prior to December 28, 1993.

We affirm the court's decision to credit Ms. Ball for medical insurance premiums paid by her new husband to cover Mr. Peterson's children, but reverse and remand inasmuch as the court may have credited Ms. Ball for portions of the premiums covering anyone other than Mr. Peterson's children.

Finally, we affirm the court's conclusion that there has been a material change of circumstances, but we remand for the court to enter proper, detailed findings and "an appropriate and just" support award consistent with those findings. Attorney fees are denied. The parties will bear their own costs on appeal.

We believe the existing record contains sufficient information for the court to follow our instructions on remand without receiving new evidence from the parties.

Affirmed in part, and reversed and remanded in part.

DAVIS, Associate P.J., and BENCH, J., concur.