1999 Utah Ct. App. 357

**Ricky D. KRAMBULE, Plaintiff and Appellant,**

v.

**Barbara R. KRAMBULE, Defendant and Appellee.**

No. 981567–CA.

Court of Appeals of Utah.

Dec. 9, 1999.

1986); *People v. Odom,* 226 Cal.App.3d 1028, 1032–33, 277 Cal.Rptr. 265 (Cal.Ct.App.1991).

Robert L. Neeley, Ogden, for Appellant.

Robert A. Echard and Steven L. Fenton, Ogden, for Appellee.

Before GREENWOOD, Associate P.J., and DAVIS, and ORME, JJ.

## OPINION

DAVIS, Judge:

¶1 Ricky D. Krambule (Rick) appeals the trial court's order granting partial summary judgment in favor of Barbara R. Krambule, in which the court concluded that Rick was the legal father of Matthew Krambule, and the subsequent modification of the divorce decree ordering Rick to pay child support for Matthew. Because Barbara's claim is barred by res judicata, the trial court erred in finding there was a substantial change in circumstances and therefore had no basis on which to modify the divorce decree. Accordingly, we reverse.

## BACKGROUND

¶2 Rick and Barbara were married in 1979. Although they desired to become parents, they discovered that Rick was sterile. Upon considering various options, the couple decided to go to the University of Utah School of Medicine so Barbara could be artificially inseminated with the sperm of an anonymous donor. They tried unsuccessfully for a number of years to conceive a child, but ultimately, as a result of this procedure, Bar-

bara conceived a daughter, Stephanie, who was born in 1985.

¶3 In 1989, after experiencing some marital discord, Rick and Barbara separated. Eventually, however, the couple reconciled and, in approximately July 1990, decided to attempt to have another child. To that end, the couple again went to the University of Utah for artificial insemination. To consent to the procedure, Rick and Barbara entered into an agreement with the University of Utah, which provided in part:

2. We hereby affirm our desire to achieve pregnancy and request that artificial insemination procedures be utilized in an attempt to achieve pregnancy in the wife with semen obtained from an unidentified and undisclosed third party donor(s).

. . . .

8. We acknowledge that our participation in the artificial insemination procedure(s) is voluntary.

. . . .

10. We jointly and severally agree to recognize and accept the full legal, moral, parental, financial, social, emotional and cultural responsibility and care of any offspring that may result from any pregnancy achieved through the artificial insemination procedure(s). We also mutually and individually agree to accept and assume the same duties, obligations and responsibilities toward such offspring to the full extent in the same manner as owed by the undersigned to naturally occurring offspring, and acknowledge and agree that any offspring resulting from the artificial insemination procedure(s) shall be their legal heirs(s) and that the said offspring shall be, for all purposes, the child of the husband and wife, and the husband shall for all purposes be considered the father of the said offspring.

After entering into the agreement, the couple selected three anonymous donors and began the artificial insemination process, which included Barbara's submission to ongoing treatment, medication, and multiple surgeries.

¶4 Despite their rejuvenated marriage and plans for the future, more discord arose be-

tween Rick and Barbara and, on or about May 3, 1991, Rick moved out of the home. Notwithstanding this separation, Barbara continued the artificial insemination process and, on June 23, 1991, conceived a son, Matthew.[1] Although Barbara did not inform Rick that she was continuing the insemination process, in a post-separation letter written by Rick to Barbara, Rick stated, "if you get pregnant[,] I've got no idea how that's going to work."

¶ 5 A few months after separation, in August 1991, Rick initiated divorce proceedings. Subsequently, Barbara's counsel wrote a letter to Rick's counsel, advising that Barbara was pregnant and would not agree to a stipulation and property settlement that did not provide for support of the expected child.[2] Nonetheless, the couple apparently eventually agreed on an alternative settlement and, on January 16, 1992, they executed a stipulation which did not require Rick to support the expected child, but did require him to pay alimony. *See supra* note 2. After a February 1992 hearing, the commissioner concluded there were irreconcilable differences and accepted the stipulated settlement. The minute entry from this hearing further indicated, "There is a child expected by [Barbara] but the child is not [Rick's]."

¶ 6 Matthew was born on March 24, 1992, and on April 6, 1992, the divorce decree was entered which incorporated the stipulated settlement. The decree did not require Rick to pay support for Matthew, but did order support to be paid for the couple's first child, Stephanie. Rick was also ordered to pay alimony for up to four years or until Barbara graduated from college, and to pay all reasonable book and tuition expenses for Barbara's college education.

¶ 7 In July 1996, over four years after entry of the divorce decree, Barbara petitioned the court to modify the decree. In her petition, Barbara requested an increase in child support for Stephanie and an order for Rick to pay child support for Matthew, asserting "[t]here has been a material change of circumstances since the Court originally established child support in this matter consisting in part of an additional child being born to the parties." Barbara further asserted that the court never ruled on the paternity of Matthew and requested an order declaring Rick the father.

¶ 8 Before trial, both parties moved for summary judgment on the issue of whether Rick was the legal father of Matthew. Neither party disputed that Rick was not Mat-

1. The record does not reflect that Rick made any effort to contact the University of Utah to withdraw his consent to the artificial insemination.

2. The letter provided:
 In connection with the above matter, my client [Barbara] has recently brought to my attention an item that she debated at great lengths whether she should or should not pursue and has finally decided she's going to pursue it.
 Your client and my client agreed to artificial insemination so that the parties could have another child.
 This artificial insemination was in fact conducted and as a result my client is pregnant and expecting a child.
 [Barbara] is somewhere between 4 and 6 months pregnant and since [Rick] agreed to the artificial insemination and she's going to obtain for me his written consent, the child is his and I've tried this before where the Court has acknowledged these types of agreements.
 My client has indicated that if he will not put up a fuss over this child, pay the child support in accordance with the schedule for the children, then she would give up any claim she has to alimony.

 In addition, she indicated that she would allow overnight visits on Mondays and Wednesdays and when school is not in session, which would include holidays and summer vacation.
 Please review this with your client, get back with me and if we can work out a Stipulation along those lines, let me know.
 The Stipulation you sent me does not provide for that and my client is not willing to sign it.
 I did forward to [Barbara] a copy, she has it, and that's what brought this to mind because she does not feel that this child should be left out and the parties would then have two children, Stephanie and whatever this child turns out to be, whether it's a boy or a girl.
 Please review this with your client and get back with me[,] and if we can resolve it[,] great[,] and if not, then let's get it tried. I don't believe we've had a Pre-trial yet[,] and if your client is not willing to negotiate this item[,] then one or both of us should file a request for Pre-trial. I will await your response.

thew's biological father, and the court so ruled.[3] The court, however, granted Barbara's motion, concluding that although not genetically related, Rick had a legal obligation to Matthew. The court explained that because the couple entered into a binding contract for artificial insemination which neither party repudiated prior to conception, with respect to Matthew, both parties had the rights and responsibilities of a natural parent.

¶9 The matter subsequently went to trial on the remaining issues of child support, visitation, day care expenses, medical expenses, medical and life insurance, and attorney fees, regarding both children. The trial court concluded there had been a substantial change in circumstances.[4] The court also found that before the original divorce decree was entered Barbara made statements to Rick that she wanted only the Krambule name for Matthew; that although Barbara was emotional during the divorce process, she nonetheless testified that her decision to make no claim for Matthew was carefully considered while she had the assistance of counsel; and that in return for Barbara abandoning a claim for Matthew's support, Rick agreed to pay alimony and provide for her education. Accordingly, although the court concluded Rick was responsible for child support, it ruled that Barbara was equitably estopped from recovering child support for Matthew accruing before she filed her petition to modify, and thus ordered Rick to pay child support only prospectively from the date of filing. Rick now appeals from the entire judgment.

## ISSUES AND STANDARDS OF REVIEW

¶10 On appeal, our review centers on the trial court's grant of partial summary judgment, in which it ruled that Rick has a duty to support Matthew. " 'Summary judgment is appropriate only when there are no genuine issues of material fact and the moving party is entitled to judgment as a matter of law.' Because a summary judgment presents questions of law, we review the trial court's ruling for correctness." *In re General Determination of the Rights to the Use of All the Water*, 982 P.2d 65, 69 (Utah 1999) (citations omitted); *see* Utah R. Civ. P. 56(c). Thus, although we generally review the determination to modify a divorce decree for an abuse of discretion, insofar as that determination is based on a conclusion of law, we review it for correctness. *See Toone v. Toone*, 952 P.2d 112, 114 (Utah Ct.App.1998). We do not disturb the trial court's factual findings after trial unless clearly erroneous. *See Hudema v. Carpenter*, 380 Utah Adv. Rep. 3, 5, 989 P.2d 491, 496 (Utah Ct.App. 1999); *Osguthorpe v. Osguthorpe*, 804 P.2d 530, 534 (Utah Ct.App.1990) (per curiam).

## ANALYSIS

¶11 Rick argues that Barbara may not receive child support for Matthew because such claim is barred by res judicata, she has waived any contractual rights granted under the artificial insemination agreement, and she is equitably estopped from claiming that Rick is Matthew's father. Rick further argues that the insemination agreement was ambiguous and material issues of fact exist as to the parties' intent. Finally, Rick argues that he should not be held to be Matthew's legal father because he did not consent to Barbara's continuing the insemination process after the separation.[5]

---

3. Neither party challenges this determination (characterized as a finding of fact) on appeal.

4. The trial court failed to identify with particularity those facts supporting its conclusion that "[t]here has been a substantial change of circumstances since the entry of the Decree of Divorce" as required. *See Butler, Crockett & Walsh Dev. Corp. v. Pinecrest Pipeline Operating Co.*, 909 P.2d 225, 231 (Utah 1995) (" 'Failure of the trial court to make findings on all material issues is reversible error unless the facts in the record are "clear, uncontroverted, and capable of supporting only a finding in favor of the judgment." ' ")

(citations omitted). Regarding Matthew, the only apparent fact supporting the conclusion is the court's earlier ruling that Rick was legally liable under the contract. Because Rick does not raise this omission as a basis for reversal, we dispose of this appeal on other grounds.

5. We note that the trial court correctly analyzed Rick's obligations as arising under contract. Whereas the Legislature has addressed issues involving adoption and surrogate mothers, *see* Utah Code Ann. § 76-7-204 (1999) (prohibiting entry into surrogate contracts for profit and providing, *inter alia*, that "the surrogate mother is

¶ 12 We begin our review by evaluating whether res judicata precludes Barbara from asserting that Rick owed a duty of support for Matthew. "Res judicata has two branches: claim preclusion and issue preclusion." *Masters v. Worsley*, 777 P.2d 499, 503 (Utah Ct.App.1989). At issue here is the claim preclusion branch of res judicata. "Claim preclusion prevents relitigation of claims that have been fully litigated between the same parties, and *also precludes claims which 'could and should have been litigated in the prior action, but were not raised.'*" *Id.* (quoting *Copper State Thrift & Loan v. Bruno*, 735 P.2d 387, 389 (Utah Ct.App. 1987)) (emphasis added); *see also Jacobsen v. Jacobsen*, 703 P.2d 303, 305 (Utah 1985) (" 'When there has been an adjudication, it becomes res judicata as to those issues which were either tried and determined, or upon all issues which the party had a fair opportunity to present and have determined in the other proceeding.' ") (citation omitted).

¶ 13 The principles of res judicata apply fully in the context of divorce proceedings. *See Jacobsen*, 703 P.2d at 305. Nonetheless, "[t]he court has continuing jurisdiction to make subsequent changes or new orders for the custody of the children and their support . . . as is reasonable and necessary." Utah Code Ann. § 30–3–5(3) (Supp. 1999); *see also Bayles v. Bayles*, 981 P.2d 403, 405 (Utah Ct.App.1999). Consequently, principles of res judicata require that "a party seeking modification of a divorce decree must demonstrate that a substantial change in circumstances has occurred since the entry of the decree, and not contemplated in the decree itself." *Bayles*, 981 P.2d at 406 (alteration, citations, and quotation marks omitted); *accord Ostler v. Ostler*, 789 P.2d 713, 715 (Utah Ct.App.1990). "In the absence of such a showing, the decree shall not be modified . . . ." *Jacobsen*, 703 P.2d at 305.

¶ 14 Although Barbara's petition for modification asked the court to revisit the amount of child support due with respect to both Stephanie and Matthew, and Matthew was not mentioned in the original decree, the sole apparent factual basis for a determination of changed circumstances with respect to Matthew was that Matthew was an additional child born to the parties but not provided for in the decree.

¶ 15 Barbara must show that the alleged " ' "substantial change in circumstances has occurred *since the entry of the decree.*" ' " *Bayles*, 981 P.2d at 406 (citations omitted) (emphasis added). The undisputed facts here show that, other than foreseeable events occasioned by the passage of time, nothing new has occurred since entry of the divorce decree. That is, before the decree was entered in April 1992, the 1990 insemination agreement had been executed and Barbara became pregnant, carried the child to term, and gave birth. Further, Barbara had full knowledge that she was pregnant as a result of the insemination procedure at the time she executed the stipulated settlement which deliberately omitted any obligation for Rick to pay child support for Matthew. Indeed, the letter from Barbara's counsel shows she knew she had a claim for Matthew's support at least three months before the entry of the decree. *See Masters*, 777 P.2d at 503 (rejecting application of res judicata to a claim not litigated in earlier divorce proceeding, stating the claim "could not have been tried in the [original] divorce [proceeding] because [plaintiff] had no knowledge of the alleged facts supporting his claim"). Finally, after trial on her petition for modification, the trial court found that although Barbara was emotional during the divorce process, she testified that her decision not to make a claim for child support was carefully considered and made with the assistance of counsel, and that in return for Barbara's abandoning this claim Rick agreed to pay alimony and provide for her education.

¶ 16 In short, there is simply no indication of any circumstances occurring *after* entry of the decree supporting a determination that

the mother of the child for all legal purposes"); *id.* §§ 78–30–1 to –19 (1996 & Supp.1999) (outlining procedures, rights, and obligations in adoption context), when there is an artificial insemination using an anonymous donor's sperm, it has not yet addressed the rights and obligations of the parties involved, including the biological father, the biological mother and her husband, the child, or the health care provider.

**215**

there had been a substantial change of circumstances. As such, Barbara's claim for child support for Matthew based on the insemination agreement could and should have been asserted in the original divorce action and is therefore now barred under the principles of res judicata. Consequently, we have no option but to conclude that the trial court erred in determining there was a substantial change in circumstances and thus in modifying the divorce decree to impose a child support obligation on Rick with respect to Matthew.[6]

## CONCLUSION

¶ 17 We conclude that because all facts relating to Barbara's claim for Matthew's support were in existence and known to the parties prior to entry of the divorce decree, there has been no substantial changed circumstances warranting modification. Hence, Barbara is barred by principles of res judicata from now asserting her contractual claim

for Matthew's support which could and should have been litigated in the original proceeding. Consequently, we reverse the trial court's grant of partial summary judgment, and remand for entry of partial summary judgment in favor of Rick. We further reverse those portions of the trial court's final order based on the determination that Rick was Matthew's legal father, and remand for entry of a new final order consistent with this opinion.

¶ 18 Reversed and remanded.

¶ 19 WE CONCUR: PAMELA T. GREENWOOD, Associate Presiding Judge, and GREGORY K. ORME, Judge.

---

6. Our disposition on this basis forecloses the need to address Rick's alternate arguments.