2002 UT App 75

Kathryn Ann JOHANSEN nka Kathryn Ann Turner, Plaintiff and Appellee,

v.

Paul R. JOHANSEN, Defendant and Appellant.

State of Utah, Office of Recovery Services, Intervenor and Appellee.

No. 20001127–CA.

Court of Appeals of Utah.

March 14, 2002.

Jeffrey Robinson, Robinson & Sheen LLC, Salt Lake City, for Appellant.

Mark L. Shurtleff, Attorney General, Karma K. Dixon, Assistant Attorney General, and Steven C. Russell, Affordable Legal Advocates, Salt Lake City, for Appellee.

Before JACKSON, P.J., and GREENWOOD, and THORNE JJ.

## OPINION

JACKSON, Presiding Judge:

¶ 1 Appellant Paul R. Johansen appeals the trial court's denial of his motion for partial summary judgment. We reverse and remand.

## BACKGROUND

¶ 2 Appellant and Appellee were divorced in January, 1989. At that time they had three children: Laura, Lynsay, and Leisa. The divorce decree awarded Appellee a lump sum of $540.00 per month in child support, and did not address changes in child support when the children became "emancipated" [1] by reaching eighteen years of age. Laura reached her eighteenth birthday on September 2, 1995, as Lynsay did on October 1, 1997. Intervenor, Utah Office of Recovery Services (ORS), "collected child support and sought to collect arrears from [Appellant] after the children's eighteenth birthdays at the original child support amount without any adjustment." On February 15, 2000, Appellant petitioned the trial court to modify his child support obligation, seeking an order that would retroactively reduce his child support obligation from the time Laura and Lynsay became emancipated. The trial court denied his motion for partial summary judgment as to this issue. This appeal followed.

## ISSUES AND STANDARD OF REVIEW

¶ 3 Appellant challenges the trial court's conclusion that "[b]ecause the decree of divorce was entered prior to" the enactment of Utah Code Ann. § 78–45–7.10 (Supp. 2001) [2] (Automatic Adjustment Statute), that the Automatic Adjustment Statute, which "provides for an automatic adjustment of child support when a child" becomes emancipated, does not apply. [3] Appellant also challenges the trial court's legal conclusion that

> [b]ecause the parties' decree neither specifies a per-child amount of child support nor the incomes of the parties at the time the decree was entered, it is impossible for the Court to evaluate retroactively what child

---

1. The heading of Utah Code Ann. § 78–45–7.10 (Supp. 2001), which provides for the automatic adjustment of a child support obligation when a child reaches the age of eighteen or graduates from high school, is entitled "Adjustment when child becomes emancipated." We note that "emancipation" is a legal term of art, which has a broader meaning than the Legislature intended when referring to the effect of this statute. See Black's Law Dictionary 539 (7th ed. 1999). However, for the sake of convenience, we use the term in the narrower sense intended by the Legislature when referring to section 78–45–7.10.

2. This statute provides:

   (1) When a child becomes 18 years of age, or has graduated from high school during the child's normal and expected year of graduation, whichever occurs later, the base child support award *is automatically adjusted* to reflect the base combined child support obligation shown in the table for the remaining number of children due child support, unless otherwise provided in the child support order.

   (2) The award may not be reduced by a per child amount derived from the base child support award originally ordered.
   (3) The income used for purposes of adjusting the support shall be the income of the parties at the time of the entry of the original order. If income was not listed in the findings or order and worksheets were not submitted, the parties may submit tax returns or other verification of the income.

   Utah Code Ann. § 78–45–7.10 (Supp. 2001) (emphasis added).

3. The trial court ruled that the Automatic Adjustment Statute is inapplicable here, concluding that the statute cannot be applied retroactively. Moreover, it concluded, implicitly in its order and expressly in its signed minute entry preceding its order, that because the divorce decree awarding child support predated the child support "guidelines" referenced in the statute, it is "impossible" to calculate the child support award according to those guidelines. Appellant challenges both conclusions.

**522**

support should have been when the first child reached age 18 or when the second child reached 18.

¶ 4 " " "Summary judgment is appropriate only when there are no genuine issues of material fact and the moving party is entitled to judgment as a matter of law." Because a summary judgment presents questions of law, we review the trial court's ruling for correctness.' " *Krambule v. Krambule*, 1999 UT App 357,¶ 10, 994 P.2d 210 (citations omitted); *see also Department of Human Servs. v. Jacoby*, 1999 UT App 52,¶ 7, 975 P.2d 939 (" 'Whether a statute operates retroactively is a question of law, which we review for correctness without deference to the district court.' " (Citation omitted.)); *Brinkerhoff v. Brinkerhoff*, 945 P.2d 113, 115 (Utah Ct.App.1997) (applying a correction of error standard of review to interpretation of statute governing child support proceedings); *Ball v. Peterson*, 912 P.2d 1006, 1009 (Utah Ct.App.1996) (same).

## ANALYSIS

¶ 5 We first address whether the Automatic Adjustment Statute may apply to support orders in force prior to the effective date of the statute. A statute may be applied retroactively where it "is merely procedural and does not 'enlarge, eliminate, or destroy vested or contractual rights.' " *Ball v. Peterson*, 912 P.2d 1006, 1009 (Utah Ct. App.1996) (citation omitted); *accord Pilcher v. State Dept. of Soc. Servs.*, 663 P.2d 450, 455 (Utah 1983). On the other hand, a statute is substantive and may not be applied retroactively where it "establishes 'a primary right and duty which was not in existence at the time [the claim] arose.' " *Id.* (alteration in original) (quoting *Washington Nat'l Ins. Co. v. Sherwood Assocs.*, 795 P.2d 665, 669–70 (Utah Ct.App.1990)); *accord Brown & Root Indus. Serv. v. Industrial Comm'n*, 947 P.2d 671, 675 (Utah 1997).

¶ 6 "[N]o one has any vested rights in a [child] support decree which statutorily may be changed from time to time by a court under its continuing jurisdiction. . . ." *Wiker v. Wiker*, 600 P.2d 514, 515 (Utah 1978); *accord Kocherov v. Kocherov*, 775 S.W.2d 539, 541 (Mo.Ct.App.1989) (" 'Since a child support order is modifiable after judgment . . . a child's right to future, unaccrued installments of child support is not a vested right.' " (Citation omitted.)). In other words, a child support payment does not become a vested right until it accrues. The Automatic Adjustment Statute became effective before the child support payments in question accrued. Indeed, the Automatic Adjustment Statute became effective April 24, 1989, *see* Utah Code Ann. § 78-45-7.10 (Supp. 1989), while Laura and Lynsay became eighteen years old on September 2, 1995 and October 1, 1997 respectively. Thus, at the time the statute became effective, no one had a vested right to the child support payments that would accrue after Laura's or Lynsay's eighteenth birthdays. Accordingly, the statute, as applied to Laura and Lynsay, "is merely procedural and does not 'enlarge, eliminate, or destroy vested or contractual rights.' " *Ball*, 912 P.2d at 1009 (citation omitted). As a result, we conclude the Automatic Adjustment Statute may be applied retroactively to Laura and Lynsay.[4] *See id.*

---

4. Effective May 1, 2000, following Laura's and Lynsay's eighteenth birthdays, the Automatic Adjustment Statute was amended. Appellant argues we should apply the most recent version of the statute, which substituted "adjusted" for "reduced" and deleted "lower" before "base" in subsection (1). The amendment also added subsection (3), which provides:

(3) The income used for purposes of adjusting the support shall be the income of the parties at the time of the entry of the original order. If income was not listed in the findings or order and worksheets were not submitted, the parties may submit tax returns or other verification of the income.

Utah Code Ann. § 78-45-7.10 (Supp. 2001). These amendments merely " 'prescribe[ ] the

practice and procedure or the legal machinery by which the substantive law is determined or made effective,' " *Olsen v. Samuel McIntyre Inv. Co.*, 956 P.2d 257, 260 (Utah 1998) (citation omitted), or "simply clarif[y] the Legislature's previous intentions." *Washington Nat'l Ins. Co. v. Sherwood Assocs.*, 795 P.2d 665, 669 (Utah Ct.App. 1990). They do not " 'enlarge, eliminate, or destroy vested or contractual rights;' " thus, they are procedural and may also be applied retroactively. *Ball v. Peterson*, 912 P.2d 1006, 1009 (Utah Ct.App.1996) (citation omitted). "[I]f a statutory amendment is deemed procedural or remedial, then it applies to all actions-those which have accrued or are pending (pending from time of commencement until final determination), and to future actions." *Wilde v. Wilde,*

■ ¶ 7 Appellant next challenges the trial court's conclusion that because the divorce decree awarding child support predated the child support guidelines, it is "impossible" to calculate the child support award according to those guidelines.[5] Put differently, he argues the trial court interpreted the Automatic Adjustment Statute in a way that would render portions of it inoperable, thus presenting us with a question of statutory interpretation.

> [O]ur primary goal when construing statutes is to evince "the true intent and purpose of the Legislature [as expressed through] the plain language of the Act." In doing so, we seek "to render all parts thereof relevant and meaningful," and we accordingly avoid interpretations that will render portions of a statute superfluous or inoperative.

*Hall v. Utah State Dep't of Corr.*, 2001 UT 34, ¶ 15, 24 P.3d 958 (second alteration in original) (citations omitted).

■ ¶ 8 We do not agree that the statute should be construed in a manner that renders it superfluous or inoperative. The Automatic Adjustment Statute reduces the combined child support obligation "to reflect the [amount] *shown in the table* for the remaining number of children due child support." Utah Code Ann. § 78–45–7.10 (emphasis added). Utah Code Ann. § 78–45–2(5) (Supp. 2001) provides that " 'table' means the appropriate table in Section 78–45–7.14." Neither section specifies which year's table should be applied. "[O]missions in statutory language should 'be taken note of and given effect.' " *Biddle v. Washington Terrace City*, 1999 UT

110,¶ 14, 993 P.2d 875 (citation omitted). Giving effect to the Legislature's omission requires us to interpret the omission of a specific year as the Legislature's intent to apply tables in effect as of the same year as the omission. If it intended a different year's statute to be applied, it would have said so. Also, we cannot suppose that the Legislature intended this statute to be rendered inoperative simply because no "table" existed at the time many of the orders to which the statute would later apply were entered. Thus, giving effect to the Legislature's omission, and to avoid an interpretation that would often render the statute inoperative, we conclude "the table" referred to in the Automatic Adjustment Statute to be the base combined child support obligation table in effect the same year as the version of the Automatic Adjustment Statute that is being applied.[6]

■ ¶ 9 Further, we note that the base combined child support obligation table, as applied here, is procedural in nature for the same reasons that the Automatic Adjustment Statute is procedural. Thus, the guidelines referred to in the Automatic Adjustment Statute may also be applied retroactively in this case. Accordingly, we reverse the trial court's ruling that calculating the child support award in this case is "impossible" simply because the divorce decree awarding child support predated the guidelines referenced in the Automatic Adjustment Statute.

■ ¶ 10 Next, we address Appellant's challenge to the trial court's conclusion that "[b]ecause the parties' decree neither specifies a per-child amount of child support nor

969 P.2d 438, 442 (Utah Ct.App.1998). Accordingly, Utah Code Ann. § 78–45–7.10 (Supp. 2001) should be applied.

5.  ORS characterizes the trial court's conclusion to mean that "the automatic nature of this provision can only work if a guideline table existed and was utilized in calculating the original order."

6.  Thus, as applied here, the "table" referred to in Utah Code Ann. § 78–45–7.10 (Supp. 2001) is Utah Code Ann. § 78–45–7.14 (1996), which was in effect at the time Lynsay was emancipated. There were no substantive changes between this table and the tables in effect when Laura was emancipated in 1995. *Compare* Utah Code Ann. § 78–45–7.14 (1996), *with* Utah Code Ann. § 78–

45–7.14 (Supp. 1994). If the amounts in the table referred to in the newer version of the Automatic Adjustment Statute had changed from the time Laura was emancipated, the 1996 table would not be "merely procedural" because it would " 'enlarge, eliminate, or destroy vested ... [child support] rights' " since child support for Laura had already accrued in 1995. *Ball*, 912 P.2d at 1009 (citation omitted). Further, under these circumstances, Utah Code Ann. § 78–45–7.10 (Supp. 2001) would also be substantive as applied to Laura because it would apply a substantively amended table, and we would not be able to apply the most recent version of the statute retroactively to her.

the incomes of the parties at the time the decree was entered, it is impossible for the Court to evaluate retroactively what child support should have been when the first child reached age 18 or when the second child reached 18." This challenge also presents us with a question of statutory interpretation. We determine that the trial court erred in its legal conclusion.

¶ 11 Nothing in the plain language of the statute makes automatic adjustment of a child support order dependent on whether the original order specified a per-child amount or the parties' incomes at the time the order was entered. Indeed, the Automatic Adjustment Statute simply states that "the base child support award is automatically reduced ... [as] shown in the table for the remaining number of children due child support, unless otherwise provided in the child support order." Utah Code Ann. § 78–45–7.10 (Supp. 2001). This unambiguous language plainly requires automatic reduction unless otherwise provided in the original order. Here, the original order does not provide otherwise.

¶ 12 Moreover, the 2000 amendment to the Automatic Adjustment Statute specifically provides a solution where the original order fails to specify the parties' incomes:

(3) The income used for purposes of adjusting the support shall be the income of the parties at the time of the entry of the original order. If income was not listed in the findings or order and worksheets were not submitted, the parties may submit tax returns or other verification of the income.

Utah Code Ann. § 78–45–7.10(3) (Supp. 2001). Thus, automatic reduction of a child support award is not made "impossible" simply because the parties' incomes were not specified in the original order. Accordingly, Appellant's child support obligation should have been automatically adjusted when Laura and Lynsay were emancipated.

## CONCLUSION

¶ 13 Utah Code Ann. § 78–45–7.10 (Supp. 2001) is procedural as applied to Appellant. Thus, Appellant is entitled to retroactive reduction of the base child support award as of Laura's and Lynsay's respective emancipa-

tions. Those reductions should be calculated according to the "base combined child support obligation shown in the table for the remaining number of children due child support," as indicated above. Utah Code Ann. § 78–45–7.10 (Supp. 2001). Accordingly, we reverse and remand for further proceedings consistent with this opinion.

¶ 14 I CONCUR: WILLIAM A. THORNE JR., Judge.

GREENWOOD, Judge (dissenting):

¶ 15 I respectfully dissent from my colleagues, to suggest an alternative approach to resolving the primary issue in this case.

¶ 16 I begin by repeating some of the facts included in the majority opinion and adding some additional facts. The divorce decree in this case was entered January 1989. The decree included an order of child support for the three children of $540 per month. The order was silent as to any per child amount or future reductions as each child turned eighteen or was otherwise excluded from child support.

¶ 17 Utah Code Ann. § 78–45–7.10 (Supp. 1989) (the Statute) was enacted and became effective April 24, 1989. The Statute originally provided that it was effective when a child became eighteen years of age. *See id.* It was amended in 1994 to the present version of subsection (1), to state it was effective at age eighteen "or [when the child] has graduated from high school during the child's normal and expected year of graduation, whichever occurs later." Utah Code Ann. § 78–45–7.10(1) (Supp. 1994). The two older children, Laura and Lynsay, turned eighteen on September 2, 1995 and October 1, 1997, respectively. The State, through the Office of Recovery Services (ORS), acted on behalf of appellee to collect the child support. *See* Utah Code Ann. § 62A–11–101 to –104 (2000). Appellant appeared in court on an Order to Show Cause on October 4, 1995, brought by ORS to collect child support arrearages that had accrued through May of 1995, before any of the children turned eighteen. Almost a year later, appellant contacted ORS regarding reducing his child support obligation because of his eldest child's eman-

cipation. ORS asked appellant to provide worksheets that appellant had indicated he possessed. However, there was no further communication between appellant and ORS. On February 15, 2000, appellant filed his petition to modify child support and retroactively reduce his child support obligation.

¶ 18 At the time the divorce decree was entered, Utah Code Ann. § 15–2–1 (1999) provided, as it does now, that "[t]he period of minority extends in males and females to the age of eighteen years. . . . It is further provided that courts in divorce actions may order support to age 21." Utah Code Ann. § 15–2–1 (1999). Therefore, courts may order child support to be paid for a child up to twenty-one years of age, provided appropriate findings are entered. *See Fletcher v. Fletcher,* 615 P.2d 1218, 1224 (Utah 1980); *Thornblad v. Thornblad,* 849 P.2d 1197, 1199–1200 (Utah Ct.App.1993) (upholding trial court's continuation of child support beyond age eighteen based on substantial change of circumstances). The courts can also enforce an agreement by the parties in a divorce action to continue support beyond that allowed by statutory law. *See Despain v. Despain,* 627 P.2d 526, 528 (Utah 1981); *see also Balls v. Hackley,* 745 P.2d 836, 837–38 (Utah Ct.App.1987) (affirming trial court's enforcement of parties' stipulation that child support would continue after eighteen years under specified circumstances).

¶ 19 Until 2000, ORS could not modify a support order unless it acted through the courts. In *Karren v. State Department of Social Services,* 716 P.2d 810 (Utah 1986), our supreme court held that the Public Support of Children Act then in effect gave the state agency "the power to collect unpaid support debts that accrue[ ] under existing court orders," but not "the power to modify an already existing support order. The power to modify a decree is retained by the courts under section 30–3–5." *Id.* at 813. Therefore, ORS could not modify support orders through administrative proceedings. *Id.* The holding in *Karren* was applied in *Starks v. Department of Social Services,* 750 P.2d 199, 200 (Utah Ct.App.1988). *Starks* also noted that because ORS's "right to reimbursement is derived from the spouse enti-

tled to support," it could seek modification from the courts based on a "substantial change in circumstances occur[ring] subsequent to the entry of the original divorce decree." *Id.* at 201.

¶ 20 This court's opinion in *Ball v. Peterson,* 912 P.2d 1006 (Utah Ct.App.1996), cited by the majority, appears to be the only Utah decision addressing the impact of the Statute. In *Ball,* the child support order at issue was entered in 1992 and did not refer to emancipation or other events that would terminate child support. *See id.* at 1008. A month later, one of the children turned eighteen. Later, a second child moved in with the father (the obligor in this case) and also turned eighteen. *See id.* Both children turned eighteen before the 1994 amendment to the Statute, which added the provision that support be adjusted after the age of eighteen *or* graduation from high school, whichever occurred later. The father proportionately reduced the child support he was paying and filed a petition to modify child support, based in part on the fact that the two children were then eighteen. *See id.* The trial court's order assumed that the 1994 amendment was applicable in determining child support due. *See id.* at 1009.

¶ 21 This court held that the trial court erred in retroactively applying the 1994 amendment, which would have extended the father's obligation beyond the eighteenth birthdays of his children. *See id.* This court concluded that the amendment was substantive because it determined when a support obligation ends and affects a child's substantive right to support. *See id.* The amendment could not apply because the children turned eighteen before the amendment's effective date.

¶ 22 The *Ball* court went on to discuss the retroactivity of the trial court order. *See id.* at 1011. That order had not only erroneously awarded child support through the date of graduation from high school, but had also awarded an increase in child support for other unemancipated children on the basis of a substantial change in circumstances. This court reversed the increased child support award to the extent it was retroactive. *See id.* at 1011–12. The court cited Utah Code

Ann. § 30–3–10.6(2) (1998), which provides that a support order may not be retroactively modified, except to the date when the petition to modify was filed and the other party was notified. *See Ball*, 912 P.2d at 1011–12.[1] However, the court also examined application of the Statute and its mandate that the base child support award be reduced or adjusted.[2] *See id.* at 1010. In *Ball*, the father's child support obligation increased, in part, because the custody formula changed from joint to sole custody. *See id.* at 1011. The *Ball* opinion uses the statutory term "automatic" to describe the adjustment when a child reaches the age of majority, *id.* at 1011, 1013, but does not address further what "automatic" means. In *Ball*, the father's petition was filed within three months of the eighteenth birthday of one of the children, followed by his former wife's counter petition, wherein she sought child support until the later dates when the children graduated from high school. The court neither discussed nor addressed retroactive modification of the child support based on the Statute, and it appears that this issue was not before the court. Moreover, the facts in *Ball* differ from this case, where appellant seeks retroactive adjustment of support to a date almost five years preceding the filing of his petition. Also, because the children in this case turned eighteen *after* the effective dates of the statute and the 1994 amendment, there is no prohibition in applying the statute as amended. As a result, *Ball* does not resolve the issue before us of the propriety of retroactive relief.

¶ 23 Appellant filed his petition to modify prior to when the legislature authorized ORS to conduct adjudicative proceedings to modify child support orders in some circumstances, including where the parties stipulate to the changes. *See* Utah Code Ann. §§ 62A–11–106, –304.2 (2000 & Supp. 2001). Therefore, a court petition was the only means available to modify the child support order at that time.

¶ 24 According to ORS's brief, their practice and policy when the original support order is not clear, is to seek agreement of the parties to modify a child support award. If, however, the parties cannot agree and the order is ambiguous, ORS will not try "to interpret the intent of the trial court but will continue to enforce the support based upon the existing order, as it is written, until further order of the court." *See also* Utah Code Ann. § 78–45–7 (Supp. 2001) (providing for automatic adjustments of support when provided for in order).

¶ 25 The issue before us in this case, I believe, is the interplay among the Statute's provision for automatic adjustment of the base child support obligation; section 30–3–10.6(2) (renumbered as Utah Code Ann. § 78–45–9.3(4) (Supp. 2001)), prohibiting retroactive modification of support orders; and section 15–2–1's allowance for support up to age twenty-one. Or, stated differently, does "automatic," as used in the Statute, allow retroactive modification of child support to the triggering date of either a child's eighteenth birthday or graduation from high school.

¶ 26 In construing statutory language, we read statutes "as a whole, and [interpret their] provisions in harmony with other provisions in the same statute and 'with other statutes under the same and related chapters.'" *Lyon v. Burton,* 2000 UT 19, ¶ 17, 5 P.3d 616 (citation omitted). I believe we can harmonize the various statutory provisions by holding that the Statute mandates adjustment of child support obligations, when appropriate, based on the worksheets and procedures referred to in the Statute. The adjustment is automatic when that procedure is applied. The child support guidelines are designed so that when the required information is inserted there is an automatic calculation of the base child support and the

---

1. The statute states:

   A child or spousal support payment under a child support order may be modified with respect to any period during which a petition for modification is pending, but only from the date notice of that petition was given to the obligee, if the obligor is the petitioner, or to the obligor, if the obligee is the petitioner.

Utah Code Ann. § 30–3–10.6(2) (1998) (renumbered and amended as Utah Code Ann. § 78–45–9.3(4) (Supp. 2001)).

2. The Statute originally used the term "reduce" and was amended to substitute the word "adjust." The *Ball* court discussed the impact of the change in language. *See Ball v. Peterson,* 912 P.2d 1006, 1010 (Utah Ct.App.1996).

child support obligation. *See* Utah Code Ann. § 78–45–7.7 (Supp. 2001). However, the timing of the effectiveness of the automatic adjustment is limited by section 30–3–10.6(2). Further, it may not happen at all if the support order provides for extended support as permitted in section 15–2–1, or "otherwise provide[s] in the child support order." Utah Code Ann. § 78–45–7.10(1) (Supp. 2001).

¶ 27 In this case, the adjusted child support would be retroactive to the date ORS was notified that appellant had filed his petition to modify. This result is consistent with Utah cases holding that where a modification in child support was justified by circumstances such as a change in custody of children, but the petition to modify was not filed until some time after the triggering event, retroactive reimbursement was nevertheless barred. *See Karren,* 716 P.2d at 812–13; *Starks,* 750 P.2d at 201. When the order is self-executing by providing that child support will adjust in accordance with the child support guidelines and tables when the children are emancipated, there is, of course, no need to modify the order. Furthermore, we must allow for operation of section 15–2–1, which coexists with the Statute and allows for support orders other than the "automatic" adjustments resulting from application of the Statute.

¶ 28 I would therefore affirm the trial court's denial of appellant's motion for summary judgment.