2000 UT 98

James COLEMAN, deceased, By and Through Karen SCHEFSKI, his personal representative, Plaintiff and Appellant,

v.

Michael H. STEVENS, M.D., Defendant and Appellee.

No. 990355.

Supreme Court of Utah.

Dec. 15, 2000.

Melvin S. Martin, Murray, for plaintiff.

Curtis J. Drake and Scott C. Sandberg, Salt Lake City, for defendant.

WILKINS, Justice:

¶1 James Coleman appeals from an adverse jury verdict in his action for medical malpractice. We reverse in part and remand in part as to taxable costs, but otherwise affirm.

## BACKGROUND

¶2 In March of 1991, James Coleman was diagnosed with laryngeal cancer by Dr. Kim Davis. Based upon Mr. Coleman's condition, Dr. Davis determined that two options were feasible, a total laryngectomy or, alternatively, radiation therapy. Dr. Davis concluded that a partial laryngectomy was not a reasonable treatment option. Mr. Coleman underwent radiation therapy. In February of 1992, Mr. Coleman was having difficulty breathing so he again visited Dr. Davis. Dr. Davis suggested that a tracheotomy be performed to secure Mr. Coleman's breathing passage, followed by a biopsy, and a total laryngectomy if the biopsy was positive for cancer. Dr. Davis was unable to perform the biopsy or the laryngectomy, however, because Mr. Coleman left the University of Utah ("University") hospital against medical advice.

¶3 Immediately after leaving University hospital, Mr. Coleman went to the Veterans' Administration ("VA") hospital. At the VA hospital, he was admitted and treated for an emergency airway crisis by Dr. Braby. Dr. Braby, after examining Mr. Coleman and consulting with Dr. Davis, also recommended a biopsy followed by a total laryngectomy if the biopsy was positive. Dr. Braby did not consider a partial laryngectomy to be a reasonable option either. Mr. Coleman refused to consent to a biopsy or total laryngectomy. Consequently, because Dr. Braby was unable to convince Mr. Coleman to consent to the biopsy and total laryngectomy, only a tracheotomy was performed.

¶4 Several weeks later, on March 5, 1992, Mr. Coleman went to defendant, Dr. Michael Stevens. Dr. Stevens arranged for a biopsy, and when the biopsy indicated cancer, Dr. Stevens told Mr. Coleman that a total laryngectomy was the only safe available option. Dr. Stevens did not discuss a partial laryngectomy because he felt the procedure would be detrimental or damaging to Mr. Coleman and consequently did not believe it was a reasonable alternative. Mr. Coleman consented to the total laryngectomy.

¶5 Dr. Stevens performed a total laryngectomy on March 18, 1992. After the operation, Mr. Coleman developed a fistula in the suture line where his throat was closed. Dr.

Stevens suggested that Mr. Coleman have the fistula closed through a procedure using the sternocleidomastoid muscle (SCM), and if this procedure was unsuccessful, perform another procedure using the pectoralis major flap (PMC). The SCM procedure did not work, so the PMC procedure was performed.

¶ 6 Mr. Coleman sued Dr. Stevens, claiming that he should have been advised of the alternative treatment of a partial laryngectomy and the risks associated with it as opposed to the total laryngectomy. He also asserted that Dr. Stevens negligently performed the SCM procedure. The case went to trial, and a jury returned a verdict in favor of Dr. Stevens. The district court also awarded costs to Dr. Stevens. Mr. Coleman appeals.

## ANALYSIS

¶ 7 Mr. Coleman listed ten issues at the outset of his brief. However, he briefed only four. "It is well established that a reviewing court will not address arguments that are not adequately briefed." *State v. Thomas*, 961 P.2d 299, 304 (Utah 1998); *accord State v. Herrera*, 895 P.2d 359, 368 n. 5 (Utah 1995) (disregarding issues not properly briefed); Utah R.App. P. 24(j). Failure to provide any analysis or legal authority constitutes inadequate briefing. *See* Utah R.App. P. 24(a)(9) (stating that briefs must contain reasoned analysis based upon relevant legal authority); *Thomas*, 961 P.2d at 305 (declaring that an issue is inadequately briefed when the "overall analysis of the issue is so lacking as to shift the burden of research and argument to the reviewing court"). As a result, we cannot, and do not, address further the issues not briefed by Mr. Coleman.

¶ 8 The four issues briefed by Mr. Coleman are: (1) whether a person has a constitutional right to control his or her medical treatment; (2) whether a patient's right to self-determination requires the disclosure of all material information regarding proposed medical treatment; (3) whether Utah's Medical Malpractice Act, specifically Utah Code Ann. § 78-14-5 (1996), is unconstitutional; and (4) whether the district court erred in awarding costs to defendant for expert witness fees, deposition costs, and the costs of exhibits.

¶ 9 Dr. Stevens contends that Mr. Coleman should be precluded from raising the first three issues on appeal because he did not raise them before the trial court. We agree. The trial court had no opportunity to rule on any of the first three issues. Not one of these issues was raised before the trial court, and the record does not reveal any request by Mr. Coleman that they be addressed. Mr. Coleman claims in his reply brief that he should be allowed to raise these three issues for the first time on appeal because they constitute plain error or manifest injustice. However, we will not consider matters raised for the first time in the reply brief. *See, e.g., State v. Phathammavong*, 860 P.2d 1001, 1003–04 (Utah Ct.App.1993); Utah R.App. P. 24(c). Consequently, because Mr. Coleman did not properly raise these three issues in the trial court and thereby preserve them for appellate review, and because he argued plain error or manifest injustice for the first time in his reply brief, we decline to review them.

¶ 10 The only remaining issue is whether the district court exceeded the permitted range of discretion in awarding costs to Dr. Stevens. A trial court's decision to award the prevailing party its costs is reviewed under an abuse of discretion standard. *See, e.g., Young v. State*, 2000 UT 91, ¶ 4, 16 P.3d 549 ("This court has consistently held that a trial court's decision to award the prevailing party its costs will be reviewed under an abuse of discretion standard.") (citations omitted).

¶ 11 We have previously stated that a party may recover deposition costs as long as the " 'trial court is persuaded that [the depositions] were taken in good faith and, in the light of the circumstances, appeared to be essential for the development and presentation of the case.' " *Highland Constr. Co. v. Union Pac. R.R.*, 683 P.2d 1042, 1051 (Utah 1984) (quoting *Frampton v. Wilson*, 605 P.2d 771, 774 (Utah 1980)), *quoted in Young*, 2000 UT 91 at ¶ 6, 16 P.3d 549. In other words,

The trial court may award the prevailing party its costs of depositions if it finds that the depositions are taken in good faith, and are essential to the party's development and presentation of its own case, either because the depositions were used in a meaningful way at trial, or because the development of the case was of such a complex nature that the information provided in the deposition could not have been obtained through less expensive means of discovery.

*Young,* 2000 UT 91 at ¶ 23, 16 P.3d 549.

¶ 12 As in *Young,* the trial court here did not explain the basis for the award. The trial court's order simply says,

Having reviewed the parties' supporting Memoranda, and good cause appearing, the Motion is granted. The Court is persuaded by defendant's argument that the costs for the expert witness fees, deposition costs and jurors' exhibit binders costs were both reasonable and necessary expenses for the defense of the case and therefore allowable.

As a result, we are unable to determine whether the trial court exceeded the permitted range of discretion in awarding the amounts spent on deposition fees as costs. We remand this issue to the trial court with instructions to provide adequate supporting findings as to how the depositions were essential for the development and presentation of Dr. Stevens' case, or for revision of the award of costs consistent with this opinion.

¶ 13 Second, we reverse the award of expert witness fees. As we explained in *Young,* this court distinguished taxable "costs" from other "expenses" of litigation in *Frampton. See Young,* 2000 UT 91 at ¶ 15, 16 P.3d 549. As a result, some expenses of litigation are not properly taxable as costs. Expert witness fees beyond the statutory fee for appearance are expenses of litigation and not taxable as costs. *See Young,* 2000 UT 91 at ¶¶ 16, 18, 16 P.3d 549. We therefore conclude that the trial court exceeded the permitted range of discretion in awarding Dr. Stevens his costs for expert witness fees.

¶ 14 Finally, we reverse the award of costs for trial exhibits. Trial exhibits are expenses of litigation and not taxable as costs. *Young,* 2000 UT 91 at ¶ 22, 16 P.3d 549; *Frampton,* 605 P.2d at 774. We therefore conclude that the trial court exceeded the permitted range of discretion in awarding these expenses to Dr. Stevens.

## CONCLUSION

¶ 15 For the reasons outlined above, we address only whether the trial court exceeded the permitted range of discretion in awarding deposition fees, expert witness fees, and the costs of exhibits to Dr. Stevens as taxable costs. We reverse the awards of expert witness fees and exhibit expenses and remand the award of deposition fees for supporting findings or for revision of the award consistent with this opinion. In all other respects, the judgment is affirmed.

¶ 16 Chief Justice HOWE, Associate Chief Justice RUSSON, Justice DURHAM, and Justice DURRANT concur in Justice WILKINS' opinion.