2001 UT App 225

**Travis B. DAVIS, Petitioner and Appellant,**

v.

**Elizabeth Anne DAVIS, Respondent.**

**Sandy Thornock and George T. Thornock, Intervenors and Appellees.**

**No. 20000433–CA.**

Court of Appeals of Utah.

July 19, 2001.

Rehearing Denied Oct. 16, 2001.

Linda Quinton–Burr and Lisabeth Joner, Provo, for Appellant.

Leslie W. Slaugh, Howard, Lewis & Petersen, Provo, for Appellees.

Before Judges JACKSON, BENCH, and BILLINGS.

## OPINION

BENCH, Judge:

¶1 Appellant Travis Davis (Father) appeals from the trial court's denial of his petition for an order modifying the custody award contained in a divorce decree. Father argues the trial court erred in concluding that the presumption in favor of awarding custody to a natural parent over a nonparent (parental presumption) had been rebutted. We affirm, but on different grounds.

## BACKGROUND

¶2 Father and Elizabeth Anne Davis (Mother) are the parents of K.D., who was born September 24, 1992. At the time of K.D.'s birth, Father was serving a tour of duty in Spain with the United States Navy. After his return from Spain, Father and Mother married, and the family moved to California where Father was stationed. The relationship between Father and Mother quickly deteriorated, and Father became K.D.'s primary caretaker. When K.D. was almost ten months old, Father left for a tour of duty in Guam. Mother assumed the role of primary caretaker for K.D., but was neglectful in her care for him. As a result, the State of California contacted Mother's parents (the Thornocks) and advised them that K.D. was about to be placed in foster care. Rather than risk having K.D. taken into state custody, the Thornocks took K.D. into their Utah home in November 1993. Father became aware of the situation while overseas, contacted the Thornocks, and agreed to have the Thornocks take care of K.D. until Father returned from Guam.

¶3 Early in 1994, Mother returned to Utah and shortly thereafter filed a complaint for divorce and separate maintenance. In her complaint, Mother included a claim for custody of K.D. The Thornocks intervened in the action, seeking custody of K.D. for themselves. Mother's divorce and separate maintenance actions were subsequently dismissed, but the custody dispute remained. Final adjudication of the custody issue was stayed, under the Soldiers and Sailors Civil Relief Act, 50 U.S.C. app. § 521 (1994), until Father returned from another tour of duty. The trial court did, however, award the Thornocks temporary custody of K.D.

¶4 In August 1996, Father filed his own complaint for divorce. In his complaint, Father asked that custody of K.D. be awarded to the Thornocks. Father and Mother agreed to the terms of divorce in a written stipulation signed by both parties. In the stipulation, both parties agreed that custody of K.D. should be awarded to the Thornocks. Based on the parties' stipulation, the trial court issued a finding of fact stating, "The Court finds that the minor child is presently in the custody of [the Thornocks,] who are the maternal grandparents of the minor child. The Court finds that custody of the minor child should be awarded to [the Thornocks]." On March 4, 1997, the trial court entered a final Decree of Divorce awarding custody of K.D. to the Thornocks and visitation rights to Father. Because the stipulation resolved the custody issue, the trial court did not enter findings of fact regarding Father's or Mother's parental presumption or the best interests of K.D. K.D. has lived with the Thornocks continuously from November of 1993 to the present time.

¶5 Father subsequently left the Navy, remarried, and established a stable home environment with his wife and step-children in Utah. Father filed a petition to modify the divorce decree, wherein he sought custody of K.D. After finding that changed circumstances warranted a fresh look at the custody arrangement, the trial court conducted a bench trial. The only evidence presented at trial was the testimony of the court-appointed custody evaluator, the evaluator's written evaluation and addendum to the evaluation, and the trial court's private interview with K.D., which was not recorded. After reviewing the evidence, the trial court concluded that 1) Father was entitled to the parental presumption, 2) the presumption had been rebutted, and 3) K.D.'s best interests were served by having the Thornocks retain custody. This appeal followed.

## ISSUE AND STANDARD OF REVIEW

¶6 The sole issue we consider is whether Father may assert the parental presumption after having previously stipulated

in a final divorce decree that custody should be awarded to the Thornocks.[1] When "reviewing [trial court determinations regarding the custody of children], we must do our own weighing and make our own decision based on the facts in the record. Nevertheless, the [trial] court is allowed a considerable latitude of discretion in child custody matters, and its judgment will not be disturbed unless we determine the [trial] court has exceeded the scope of permitted discretion or has acted contrary to law." *In re H.R.V.,* 906 P.2d 913, 915 (Utah Ct.App.1995) (internal quotations and citations omitted).

## ANALYSIS

¶ 7 The Thornocks argue that the parental presumption does not apply because Father previously lost custody of K.D. in a final decree of divorce. As a preliminary matter, we address Father's contention that the issue is not properly before this court because the Thornocks failed to appeal the trial court's decision that the presumption applies. The trial court awarded custody of K.D. to the Thornocks, who are asking us to affirm that decision. Accordingly, they are "free to raise arguments, not accepted below, in support of the [custody] ruling." *Nova Cas. Co. v. Able Constr. Inc.,* 1999 UT 69, ¶ 7, 983 P.2d 575; *see also DeBry v. Noble,* 889 P.2d 428, 444 (Utah 1995) ("It is well-settled that an appellate court may affirm a trial court's ruling on any proper grounds, even though the trial court relied on some other ground."). Thus, the issue is properly before us.

¶ 8 Turning to the merits of the Thornocks' argument, "entitlement to the parental presumption can be lost in certain cases, including when a parent has had his or her parental rights terminated *or* has previously lost custody of his or her child." *In re M.W.,* 2000 UT 79, ¶ 16, 12 P.3d 80 (emphasis added). Father nonetheless argues that *Dun-*

can v. Howard, 918 P.2d 888 (Utah Ct.App. 1996), requires a prior court adjudication on a parent's fitness before the presumption can ever be lost. *See id.* at 892. *Duncan* does not establish such a rule. The language in *Duncan* that Father relies on was used by the court merely to distinguish that case from *In re H.R.V.,* 906 P.2d at 917–18. *See Duncan,* 918 P.2d at 892. In *In re H.R.V.,* this court concluded that the parental presumption did not apply because the parent had previously lost custody of his child in an action for child neglect. *See* 906 P.2d at 914, 917–18. Central to the holding of *In re H.R.V.* was the fact that the parent there was not in danger of losing legal custody for the first time. *See id.* at 917. The parent in *Duncan,* however, was in danger of losing custody for the first time, so the parental presumption still applied.[2] *See Duncan,* 918 P.2d at 892.

¶ 9 In *In re M.W.,* this court required that before the parental presumption is lost, there must be a determination of parental fitness. *See In re M.W.,* 970 P.2d 284, 289 (Utah Ct.App.1998). In reversing this court's decision, the Utah Supreme Court did not endorse such a requirement. *See In re M.W.,* 2000 UT 79 at ¶ 18, 12 P.3d 80. Instead, the supreme court required only a "final factual determination on the merits of an underlying [custody] petition." *Id.* To require more would contradict the supreme court's earlier rejection of the argument that in a custody dispute between a parent and a nonparent, the parent should be awarded custody unless the parent is found unfit. *See Hutchison v. Hutchison,* 649 P.2d 38, 40 (Utah 1982). Thus, we similarly reject Father's argument, and follow the rule established by our supreme court.

¶ 10 Father therefore has no parental presumption since he previously lost custody of K.D. as the "result of a final factual determination on the merits of an underlying

---

1. Father raises multiple issues, all of which assume the continued existence of his parental presumption. We need not address these issues because our conclusion on the stated issue is dispositive.

2. Although a Pennsylvania state court had previously awarded custody of the child to the grand-

parents in *Duncan,* the Utah court and Pennsylvania court subsequently agreed that Utah would retain jurisdiction to determine custody. *See Duncan,* 918 P.2d at 890. Thus, *Duncan* involved a parent in danger of losing custody of his child for the first time.

[custody] petition." *In re M.W.*, 2000 UT 79 at ¶ 18, 12 P.3d 80. Custody of K.D. was awarded to the Thornocks in the Decree of Divorce. The Decree of Divorce, along with the accompanying findings of fact and conclusions of law, were made in accordance with a stipulated agreement between Father and Mother. Because it was a stipulated divorce, the trial court did not go through the normal analysis of the parental presumption and best interests of the child. Such analysis was not necessary because:

> [A stipulation] has all the binding effect of findings of fact and conclusions of law made by the court upon the evidence. The rationale is that the stipulation constitutes an agreement of the parties that all the facts necessary to support it ... pre-existed and would be sustained by available evidence, had not the agreement of the parties dispensed with the taking of evidence.

*United Factors v. T.C. Assocs., Inc.*, 21 Utah 2d 351, 354, 445 P.2d 766, 768 (1968); *see also In re M.W.*, 2000 UT 79 at ¶ 27, 12 P.3d 80("Factual determinations can be based either on evidence or on stipulation of the parties."). By signing a custody stipulation that reserved only visitation, Father implicitly agreed that his parental presumption had been rebutted and that K.D.'s best interests were served by giving custody to the Thornocks. Thus, the divorce decree contained a factual determination of the custody issue.

¶ 11 Furthermore, even though a trial court has continuing jurisdiction to modify a divorce decree, *see* Utah Code Ann. § 30–3–5(3) (Supp.2000), the Decree of Divorce was a final, appealable order because it resolved the controversy between Father and Mother and ended the divorce litigation. *See Copier v. Copier*, 939 P.2d 202, 203 (Utah Ct.App. 1997). Because Father lost custody of K.D. in a final factual determination of custody, he also lost his parental presumption at that time. While we recognize that parents may sometimes find themselves in situations that are incompatible with parenting responsibilities, they should not enter into a binding custody agreement without carefully considering the legal ramifications of such action.

¶ 12 Once the parental presumption is lost and the natural parent has been deprived of custody, "that parent is not entitled to reassert the parental presumption at a later date unless custody has since been restored to the parent." *In re H.R.V.*, 906 P.2d at 917. Father has not been awarded custody since entry of the final Decree of Divorce; therefore, we conclude that the trial court erred in finding that the parental presumption applied in this case.

¶ 13 With no parental presumption in effect, the parties "compete [for custody] on equal footing, and the custody award should be determined solely by reference to the best interests of the child." *Hutchison*, 649 P.2d at 41. The trial court concluded that it was in K.D.'s best interests to leave custody with the Thornocks. Father does not dispute this conclusion, and even if he did, the evidence before the trial court clearly supports the conclusion. Thus, the trial court did not abuse its discretion in denying Father's petition to modify the custody award.

¶ 14 Accordingly, we affirm.

¶ 15 WE CONCUR: NORMAN H. JACKSON, Associate Presiding Judge, and JUDITH M. BILLINGS, Judge.