2011 UT App 311

**Lisa DAVIS, Petitioner, Appellee, and Cross-appellant,**

v.

**Corey G. DAVIS, Respondent, Appellant, and Cross-appellee.**

**No. 20100238–CA.**

Court of Appeals of Utah.

Sept. 9, 2011.

David R. Hartwig, Salt Lake City, for Appellant.

Steve S. Christensen, Lisa B. Thornton, and Christopher J. Rogers, Salt Lake City, for Appellee.

Before Judges DAVIS, THORNE, and CHRISTIANSEN.

## OPINION

DAVIS, Presiding Judge:

¶ 1 Corey G. Davis appeals several aspects of the trial court's ruling on Lisa Davis's 2008 petition to modify the parties' divorce decree. Lisa cross-appeals, challenging the trial court's ruling on her request for attorney fees and requesting fees on appeal. We affirm in part and reverse in part.

## BACKGROUND

¶ 2 The parties were divorced by a Decree of Divorce entered May 23, 2002. Corey, whose gross monthly income was $7,000 per month at the time, was ordered to pay Lisa child support of $1,511 per month and was assigned to pay a number of marital debts. The decree also provided that Lisa would be entitled to claim the youngest child for tax purposes, that Corey would be entitled to claim the middle child, and that the parties would alternate claiming the third child (the income tax provision). Furthermore, the decree adopted provisions in accordance with the Utah Code, *see* Utah Code Ann. § 78B–12–212(8)–(9) (Supp.2011),[1] regarding payment of the children's health care expenses, which ordered that "[e]ach party who incurs medical expenses for the children shall provide written verification of the cost and payment of medical expenses to the other within thirty days of payment" and provided that "[a]ny party who fails to comply with the . . . notice provision[ ] may be denied the right to . . . recover the other parent's share of the expenses."

¶ 3 In October 2002, after losing his job, Corey filed a petition to modify the decree. Lisa filed an answer and a counterpetition to modify in November 2002. In 2003, Corey

---

1. Where there have been no substantive amendments that are relevant under the facts of this case, we cite the current version of the Utah Code for the reader's convenience.

declared bankruptcy. The trial court ruled on the parties' petitions in October 2005 (the 2005 modification). The trial court found that Corey was out of a job between October 2002 and October 2003 and that his new income upon becoming re-employed was $5,026 per month. The trial court found that the decrease of approximately 29% in Corey's monthly income constituted "a significant and material change of circumstances ... justifying the [c]ourt reviewing the child support ... obligations." The trial court also found that Corey had "received a discharge in bankruptcy in regard to the debts and obligations he was ordered to pay under the Decree of Divorce" but made no findings as to the effect of that discharge. The trial court imputed minimum wage of $940 per month to Lisa and determined that Corey's child support obligation should be reduced to $1,174 per month, retroactive to October 2003. In recognition of the fact that Corey was "the primary financial contributor to the cost of raising the children," the trial court also modified the income tax provision so that Corey would claim the youngest child and Lisa would claim the middle child.[2]

¶ 4 In March 2008, Lisa filed a new petition to modify, alleging several changes in circumstances: (1) that as a result of the bankruptcy, Corey was no longer paying the debts as ordered in the divorce decree, (2) that Lisa's credit had been negatively affected by Corey's failure to pay the debts, (3) that Lisa had incurred new expenses for the children's activities and school fees, (4) that Lisa had a greater need to claim the children as dependents for tax purposes than Corey, and (5) that Lisa wanted to purchase a home. Lisa requested an order modifying the income tax provision to permit her to claim all of the children for tax purposes; requiring Corey to pay for half of the children's extracurricular, school registration, and test fees; and ordering Corey to pay her attorney fees. In November 2009, Lisa filed an amended petition to modify, requesting an increase in child support.

¶ 5 Following a hearing on January 28, 2010, the trial court found that a substantial change of circumstances had occurred in that "the bankruptcy of [Corey] has materially affected the financial condition of [Lisa]":

> This court finds that [Corey] has declared bankruptcy and that by virtue of that bankruptcy filing, the creditors are now seeking to recover funds from [Lisa].... The court finds that the initial decree provided that [Corey] would pay for certain debts. The court finds that those debts have not been paid. The court therefore finds that although bankruptcy was a right [Corey] could and did invoke, that by so doing he has effectively taken from [Lisa] the benefit of her bargain in arriving at the stipulation which forms the basis of the original decree.

As a result of this change, the trial court again modified the decree (the 2010 modification) and determined that Lisa "should be able to claim all the tax exemptions for all the children," acknowledging that this was the "only remedy sought" by Lisa for Corey's failure to pay the marital debts. The trial court also found "that the parties['] incomes have changed significantly" and, on the basis of the parties' new incomes, increased child support from $1,174 per month to $1,287 per month. Next, the trial court found that "issues of school expenses have arisen that did not exist when the decree was entered" and, accordingly, modified the divorce decree "to require [Corey] to reimburse [Lisa] for one half of reasonable school expenses." Furthermore, the trial court stated that claims for reimbursement of medical expenses would be waived if the party claiming reimbursement failed to provide proof within thirty days that the bill had been incurred but that it would be unnecessary for a party to show that the bill had actually been paid in order to receive reimbursement. Finally, the trial court denied Lisa's request for attorney fees.[3] Corey appeals the trial court's modification of the income tax provision, its adjustment of child support, its order regarding school expenses, and its orders regarding

---

2. The decree was again modified, by the parties' stipulation, in 2006, but that modification, which concerned the discontinuation of Corey's alimony obligation, is not relevant to our analysis.

3. The trial court made several additional rulings that have not been challenged on appeal.

medical reimbursement. Lisa cross-appeals the trial court's decision on attorney fees and requests fees on appeal.

## ISSUES AND STANDARDS OF REVIEW [4]

¶ 6 First, Corey argues that in determining whether to modify the income tax provision, the trial court was limited by res judicata to considering only changes in circumstances occurring since the 2005 modification.[5] "A trial court's determination of whether res judicata bars an action presents a question of law. We review such questions for correctness, according no particular deference to the trial court." *Busch v. Busch*, 2003 UT App 131, ¶ 5, 71 P.3d 177 (internal quotation marks omitted). Furthermore, Corey asserts that the bankruptcy and its financial effects on Lisa could not be used as evidence that a substantial change of circumstances had occurred since the 2005 modification. When "presented with a question of law regarding what constitutes a substantial change of circumstances, [we] review[ it] for correctness." *Toone v. Toone*, 952 P.2d 112, 114 (Utah Ct.App.1998).

¶ 7 Second, Corey contends that the trial court made a legal error by modifying his child support obligation when the difference between the new and old awards was less than 10% and by making the award retroactive to a date prior to the date Lisa requested the modification. "We review the trial court's legal determinations regarding [a party]'s entitlement to child support modification for correctness." *Doyle v. Doyle*, 2009 UT App 306, ¶ 9, 221 P.3d 888. However, "[t]o preserve an issue for appellate review, a party must first raise the issue in the trial court, giving that court an opportunity to rule on the issue." *Searle v. Searle*, 2001 UT App 367, ¶ 17, 38 P.3d 307 (internal quotation marks omitted).

¶ 8 Third, Corey argues that the trial court erred by analyzing the question of whether he should be ordered to pay a share of the children's school expenses as a separate issue from child support. He argues that the trial court therefore exceeded its discretion by ordering him to pay for half of the children's school expenses in addition to child support without making a specific finding that a deviation from the child support guidelines was appropriate. "Questions about the legal adequacy of findings of fact and the legal accuracy of the trial court's statements present issues of law, which we review for correctness, according no· deference to the trial court." *In re C.K.*, 2000 UT App 11, ¶ 17, 996 P.2d 1059.

¶ 9 Fourth, Corey argues that the trial court acted contrary to Utah law by ordering that the parties need not provide one another with proof of payment in order to receive reimbursement from the other

---

4. Lisa attempts to characterize many of Corey's arguments as challenges to the trial court's findings and its exercise of discretion. In doing so, she requests that we dismiss several of his arguments on the ground that he has failed to marshal the evidence. However, we interpret Corey's arguments as presenting primarily legal challenges to the trial court's rulings. We thus find Lisa's marshaling argument to be largely inapposite to our analysis.

5. Lisa contends that this issue was not preserved. "Generally, in order to preserve an issue for appeal the issue must be presented to the trial court in such a way that the trial court has an opportunity to rule on that issue." *Pratt v. Nelson*, 2007 UT 41, ¶ 15, 164 P.3d 366 (internal quotation marks omitted). Corey, who represented himself in the trial court, contended in his answer to Lisa's 2008 petition that Lisa's "Petition to Modify is repetitive of the issues ... discussed at the time of the [2005] trial," including "[t]he debts associated with the divorce and [Corey]'s bankruptcy." At the hearing on Lisa's 2008 petition, Corey again pointed out to the trial court that the effect of the bankruptcy "was ruled on in the [2005] trial." Although Lisa is correct that Corey never specifically mentioned the term "res judicata," it is clear from the record that the trial court understood the issue as such. Specifically, the trial court acknowledged that "any issues relating to the effect of the bankruptcy should have been brought up at [the 2005] trial, because ... the judge actually put in his findings and decree something about the bankruptcy." However, it ultimately accepted Lisa's argument that the issue was not res judicata because the bankruptcy did not begin "hurting [her] credit until after that trial" and "the impact to [her] life that's been significant has happened since the [2005 modification]." While neither the trial court nor the parties conducted an in-depth discussion or analysis of the res judicata issue at the hearing, it is apparent that the trial court was aware of the challenge and rejected it.

party for medical expenses incurred on behalf of the children. "[A] trial court's interpretation of a statute is a question of law that we review for correctness." *Blackner v. Department of Transp.*, 2002 UT 44, ¶ 8, 48 P.3d 949.

¶ 10 In her cross-appeal, Lisa asserts that the trial court failed to make adequate findings in support of its decision to deny her request for attorney fees. She also contends that she is entitled to fees on appeal. "Trial courts have broad discretion in . . . awarding attorney fees. Where the trial court may exercise broad discretion, we presume the correctness of the court's decision absent . . . a clear abuse of discretion." *Mark v. Mark*, 2009 UT App 374, ¶ 7, 223 P.3d 476 (omissions in original) (internal quotation marks omitted).

## ANALYSIS

### I. Res Judicata and Tax Exemptions

¶ 11 Corey argues that because the income tax provision was modified in 2005, Lisa's attempt to modify it in 2008 based on a change of circumstances arising from the 2003 bankruptcy was barred by the claim preclusion branch of res judicata, which "precludes the relitigation of all issues that could have been litigated as well as those that were, in fact, litigated in the prior action," *Macris & Assocs. v. Neways, Inc.*, 2000 UT 93, ¶ 19, 16 P.3d 1214 (internal quotation marks omitted); *see also Throckmorton v. Throckmorton*, 767 P.2d 121, 123 (Utah Ct. App.1988) ("When there has been an adjudication, it becomes res judicata as to those issues which were either tried and determined, or upon all issues which the party had a fair opportunity to present and have determined in the other proceeding." (internal quotation marks omitted)). "The doctrine of

res judicata applies in divorce actions and subsequent modification proceedings." *Smith v. Smith*, 793 P.2d 407, 410 (Utah Ct.App.1990). Nevertheless, trial courts have "continuing jurisdiction to make subsequent changes or new orders" regarding child custody and support; the parties' property, debts, and obligations; and alimony, *see* Utah Code Ann. § 30–3–5(3), (8)(g)(i) (Supp. 2011), if the party seeking such a change is able to demonstrate that a substantial change of circumstances not contemplated in the divorce decree has occurred since the decree was entered, *see Krambule v. Krambule*, 1999 UT App 357, ¶ 13, 994 P.2d 210. *See also Smith*, 793 P.2d at 410 ("Application of res judicata in divorce actions is distinguished [from application of the doctrine in other circumstances] . . . because of the equitable doctrine that allows courts to reopen determinations if the moving party can demonstrate a substantial change of circumstances.").

¶ 12 Lisa argues that she is not barred from invoking the bankruptcy as a substantial change of circumstances because there is only a cursory reference to the bankruptcy in the 2005 findings of fact and conclusions of law; the modified decree does not mention the bankruptcy at all; the basis for the trial court's modification of the income tax provision in 2005 was Corey's income, rather than his bankruptcy; and the 2005 modification did not alter the original decree's allocation of debt. While all of these assertions are true,[6] Lisa fails to acknowledge the most critical bar to her attempted modification: the fact that the income tax provision, the only provision she seeks to modify based on the alleged change of circumstances occasioned by the bankruptcy, was modified in 2005.[7] In the 2005 modification, the trial

---

6. The bankruptcy did not occur until almost a year after Corey's 2002 petition to modify and Lisa's counterpetition were filed, so neither party asserted that the bankruptcy constituted a substantial change of circumstances to justify the modifications they sought at that time. Furthermore, the bankruptcy seemed to have little if any impact on the trial court's decision, meriting only a single line in the findings of fact and conclusions of law, which does no more than acknowledge the fact that Corey had "received a discharge in bankruptcy in regard to the debts

and obligations he was ordered to pay under the Decree of Divorce."

7. Because the facts and evidence relating to the bankruptcy were not fully considered in the 2005 modification, *see generally Macris & Assoc. v. Neways, Inc.*, 2000 UT 93, ¶ 28, 16 P.3d 1214 (stating that claims based on identical facts and evidence are barred for res judicata purposes), Lisa would not necessarily have been barred from subsequently asserting claims arising from the bankruptcy that were not actually considered

court found that Corey was "the primary financial contributor to the cost of raising the children" and determined that it was equitable to adjust the income tax provision in Corey's favor by permitting him to claim the youngest child as a dependent, despite acknowledging that Corey had "received a discharge in bankruptcy in regard to the debts and obligations he was order[ed] to pay under the Decree of Divorce." If Lisa believed that a different conclusion on the income tax issue was warranted due to the bankruptcy relieving Corey of his obligation to the parties' joint creditors and leaving her as the sole debtor on those accounts, she should have raised that argument at the time of the 2005 modification. *See generally Throckmorton*, 767 P.2d at 123 ("When there has been an adjudication, it becomes res judicata ... upon all issues which the party had a fair opportunity to present and have determined in the other proceeding." (internal quotation marks omitted)). Having failed to do so, she is barred from pursuing a modification of the income tax provision based on anything but a substantial change of circumstances occurring since the 2005 modification. *See generally McLane v. McLane*, 570 P.2d 692, 694 (Utah 1977) ("Even though the decree is res judicata as to circumstances existing at the time of the decree, if there are changed circumstances so requiring, there can be a further adjudication thereon.").

¶ 13 Next, Lisa argues that even if she is so barred, the trial court's 2010 modification should be upheld because the court found that a substantial change of circumstances had occurred since the 2005 modification, namely, as Lisa states it, that "the 2003 bankruptcy [is] negatively affecting Lisa now in ways not addressed in the 2005 [modification]." However, even construing the trial court's substantial change of circumstances finding as being limited to financial effects materializing after the 2005 modification, a modification of the income tax provision on this basis is barred by res judicata because the impact of the bankruptcy was foreseeable and should have been contemplated at the time of the 2005 modification. *Cf. Krambule*, 1999 UT App 357, ¶ 15, 994 P.2d 210 (holding that the birth of a child was not a substantial change of circumstances to justify a post-divorce declaration of paternity and order of child support where the wife was already pregnant at the time of the divorce stipulation); *Williamson v. Williamson*, 1999 UT App 219, ¶ 8, 983 P.2d 1103 (stating, in the context of an alimony modification, that "[b]efore the trial court can modify a divorce decree, it must find that there has been a 'substantial material change of circumstances *not foreseeable at the time of the divorce*'" (emphasis added) (quoting Utah Code Ann. § 30–3–5(7)(g)(i) (1998) (current version at Utah Code Ann. § 30–3–5(8)(g)(i) (Supp. 2011)))). While Lisa may not have felt the effects on her credit and finances until after the 2005 modification, her role as the sole remaining obligor on the parties' joint debts was certain from the time Corey's obligation was terminated by the bankruptcy. Thus, if Lisa wished to assert that the bankruptcy justified an award of the income tax exemptions to her, as compensation for her increased financial obligations following the bankruptcy, she should have raised that ar-

in the 2005 modification. Ironically, while Lisa may have been able to pursue some other remedy for the bankruptcy at the time of the 2010 proceeding, *see, e.g., Beckmann v. Beckmann*, 685 P.2d 1045, 1049 (Utah 1984) (holding that an order for a husband to pay certain debts under a divorce decree "was in the nature of support" and could be enforced in state court), the trial court's full consideration of the facts relating to the bankruptcy in the context of the 2010 modification will now have a res judicata effect as to further remedies, *see Macris*, 2000 UT 93, ¶¶ 28, 40, 16 P.3d 1214; *cf. Kiesow v. Kiesow*, 270 Minn. 374, 133 N.W.2d 652, 660–61 (1965) (holding that an alimony modification could consider only changes in circumstances occurring since the time of a previous child support modification because the common facts on which both a child support claim and an alimony claim were based had been "fully litigated" in the earlier hearings and the parties were "bound by those determinations"); *Smith v. Smith*, 98 N.M. 468, 649 P.2d 1381, 1382–83 (1982) (measuring a substantial change of circumstances on wife's petition to modify the amount of child support from the time of a previous modification hearing on the "proper allocation and duration of child support payments," and holding that wife's failure to raise the issue of the amount of child support in the previous related hearing constituted implicit consent to the amount).

gument at the time of the 2005 modification.[8] We therefore reverse the trial court's modification of the income tax provision.

## II. Child Support

■■■ ¶ 14 Corey next contends that the trial court erred by adjusting his child support obligation when the increase was less than 10%. *See generally* Utah Code Ann. § 78B–12–210(8) (2008) (providing that a trial court may adjust a child support award without a substantial change of circumstances if three years have elapsed since the last modification and the difference between the previous award and the new award is at least 10%). He also argues that the trial court erred by making the modification retroactive to the time of Lisa's 2008 petition to modify, which was filed on April 4, 2008, despite the fact that her request for a child support modification was not made until she submitted her amended petition to modify in November 2009. *See generally id.* § 78B–12–112(4) ("If the tribunal orders that the [child] support should be modified, the effective date of the modification shall be the month following service [of the modification pleading] on the parent whose support is affected."). However, Corey failed to preserve either argument in the trial court, and although he attempted to argue plain error in his reply brief, "we will not consider matters raised for the first time in the reply brief," *Coleman ex rel. Schefski v. Stevens,* 2000 UT 98, ¶ 9, 17 P.3d 1122 (declining to address a plain error argument raised for the first time in the reply brief).[9]

## III. School Expenses

■■ ¶ 15 Corey also challenges the trial court's order that he pay for half of the children's reasonable school expenses. We have previously explained that "private school costs are part and parcel of the child support award." *Brooks v. Brooks,* 881 P.2d 955, 959 n. 3 (Utah Ct.App.1994) (analyzing a modification of an award of private school expenses as a modification of the child support award); *see also Arnold v. Arnold,* 2008 UT App 17, ¶ 10, 177 P.3d 89 (reaffirming the rule that "it is not appropriate for a district court to award private school expenses in addition to child support"). We can conceive

8. We also note that adjustment of the income tax provision is an odd remedy for Corey's discharging his obligation to pay the marital debts, particularly given that Corey carries the bulk of the child support obligation and Lisa is likely to have a much smaller tax burden. *See generally* Utah Code Ann. § 78B–12–217 (2008) (stating that although the trial court maintains significant discretion to allocate the parties' tax exemptions, in doing so, it is expected to consider "(a) as the primary factor, the relative contribution of each parent to the cost of raising the child; and (b) among other factors, the relative tax benefit to each parent").

9. Nevertheless, we note that the trial court apparently employed the old child support table when it should have employed the new table outlined in Utah Code section 78B–12–301. That section provides that the new table, which was created in 2008, should be used to "modify a final child support order entered on or before December 31, 2007, if the modification is made on or after January 1, 2010." Utah Code Ann. § 78B–12–301(2)(d) (2008). The modification in this case was made in February 2010. Under the old table, Corey and Lisa's combined income of $7,521 per month merits an overall child support obligation of $1,551 per month for three children. *See* Utah Code Ann. § 78–45–7.14 (2002) (providing that a combined income between $7,501 and $7,600 results in a combined child support obligation of $1,551 for three children). Because Corey's income comprises 83% of the parties' total income, his obligation under the old table comes out to $1,287 per month, the amount awarded by the trial court. Under the new table, the parties' combined obligation would have been $1,630 for three children and Corey's 83% share would have been $1,353 per month. *See* Utah Code Ann. § 78B–12–301(2) (providing that a combined income between $7,501 and $7,600 results in a combined child support obligation of $1,630 for three children). This means that had the trial court followed the new table, there would have been more than a 10% difference between the previous award of $1,174 per month and the new award of $1,353 per month. Although neither party appeals the trial court's use of the old table, we think it relevant to observe that Corey's argument that the trial court should not have modified the child support, even if preserved, could only have succeeded as a result of the trial court's second error in employing the old table to calculate child support. Furthermore, even assuming that Corey is correct that the trial court erred by retroactively increasing his child support obligation between April 4, 2008, and November 23, 2009, the damage Corey suffered from that alleged error is mitigated by the fact that he has paid less child support, since November 23, 2009, than should have been required as a result of the trial court's second error in using the old child support table.

of no reason why public school fees should be categorized any differently. There is nothing about school fees that makes them different from any other expenses that must be satisfied, if at all, out of the parties' combined child support obligations. *Cf. Department of Human Servs. ex rel. Parker v. Irizarry*, 945 P.2d 676, 687 (Utah 1997) (Durham, J., dissenting) ("The neighborhood [children] live in, the comfort and safety of their transportation arrangements, the schools they attend, the educational enrichment opportunities (music, dance, art, and sports lessons) they have, the travel and recreational aspects of their lives . . .—all of these things are dependent on the total amount of income available for their support."). If child support is inadequate to cover expenses parents wish to incur on behalf of their children, such as private school, extracurricular activities, or, as in this case, advanced placement tests, there is nothing to prevent parents from agreeing to share such additional expenses in the interest of their children. However, these things are not necessities and must generally be budgeted as part of child support if the parties cannot agree otherwise.

¶ 16 Lisa argues that this court's previous decisions in *Anderson v. Thompson*, 2008 UT App 3, 176 P.3d 464, and *Arnold v. Arnold*, 2008 UT App 17, 177 P.3d 89, stand for the proposition that a trial court may make a separate order for a party to pay for school fees in addition to child support. However, her reliance on these cases is misplaced. The issue in *Anderson* was whether the mother had waived the right to enforce the trial court's order that the father pay half the cost of the children's extracurricular activities. *See* 2008 UT App 3, ¶¶ 3, 13, 176 P.3d 464. The propriety of the order itself was not at issue, and in fact, the father had apparently agreed to take on the additional obligation. *See id.* ¶ 3. The *Arnold* court, which did specifically uphold an order that a father pay for half of his children's private

school expenses in addition to child support, expressly reaffirmed the rule that "it is not appropriate for a district court to award private school expenses in addition to child support" but enforced the order because it was the result of the father's voluntary stipulation. *See* 2008 UT App 17, ¶ 10, 177 P.3d 89. The *Arnold* court correctly observed that "requiring the shared payment of *agreed-upon* private school expenses is well within the discretion of the district court." *Id.* ¶ 10 n. 2 (emphasis added).[10] The instant case is distinguishable because Corey never agreed to pay for school fees on top of his regular child support obligation.

¶ 17 Our conclusion that school fees should be paid out of child support is supported by the fact that the legislature has singled out two specific types of expenses that parents are ordered to pay in addition to their regular child support obligations: work-related child care expenses, *see* Utah Code Ann. § 78B–12–214 (2008), and the children's medical expenses, *see id.* § 78B–12–212 (Supp. 2011). This convinces us that had the legislature intended that parents be ordered to pay additional categories of expenses, such as school fees or extracurricular activities, in excess of child support, it would have enacted legislation to that effect. Thus, child-rearing expenses not statutorily distinguished from regular child support should be considered "part and parcel of the child support award." *See Brooks*, 881 P.2d at 959 n. 3. Accordingly, the trial court's order that Corey pay half of the children's school fees is a deviation from the child support guidelines, *see* Utah Code Ann. § 78B–12–210(5), (5)(a) ("If the amount in the order and the amount on the guidelines worksheet differ by $10 or more . . . the order is considered deviated . . . ."), and must be supported by a "specific finding on the record supporting the conclusion that . . . use of the guidelines would be unjust, inappropriate, or not in the best interest of [the] child[ren]," *id.* § 78B–12–210(3); *accord*

10. Misleadingly, Lisa quoted this observation in her brief but left out the qualifying phrase "agreed-upon" without indicating the omission. She similarly misrepresents this court's holding in *Gillette v. Costa*, 2007 UT App 104U, 2007 WL 858711 (mem.) (per curiam), by asserting that it supports her argument. While the *Gillette* court

"upheld" a trial court's order that a father contribute to the cost of extracurricular activities and school costs, *see id.* para. 6, it did so on the ground that the father inadequately briefed his argument and failed to marshal the evidence; the merits of the father's arguments were never actually reached, *see id.* paras. 3–4.

*Brooks*, 881 P.2d at 960. In the absence of such a finding, "the award amounts resulting from the application of the guidelines ... are presumed to be correct." Utah Code Ann. § 78B–12–210(2)(b).[11]

¶ 18 The trial court in this case found only that "school expenses have arisen that did not exist when the decree was entered." [12] This finding could be true of any number of expenses. The fact that the children's expenses have changed or even increased does not necessarily justify a modification of child support that deviates from the guidelines, particularly when the new expenses are not out of the ordinary. *Cf. Brooks*, 881 P.2d at 960 (suggesting that "[s]ignificant changes in the factual circumstances of the child, such as special education or health needs, which, if in existence at the time of the original decree would have permitted an upward deviation from the guidelines" may constitute a substantial change of circumstances justifying a modification). Moreover, the trial court's modification in this case is not accompanied by a specific finding, as required by Utah law, that it would be "unjust, inappropriate, or not in the best interest of [the] child[ren]" to employ the statutory child support guidelines. *See* Utah Code Ann. § 78B–12–112(3). *See generally Rasband v. Rasband*, 752 P.2d 1331, 1334 (Utah Ct.App.1988) ("[A trial court's] findings of fact must show that the court's judgment or decree follows logically from, and is supported by, the evidence. The findings should be sufficiently detailed and include enough subsidiary facts to disclose the steps by which the ultimate conclusion on each factual issue was reached." (cita-

tion and internal quotation marks omitted)). The trial court's order that Corey pay for half of the children's school expenses is therefore reversed.

## IV. Medical Reimbursement

¶ 19 Finally, Corey argues that the trial court erred by relieving Lisa of her statutory obligation to provide him with proof that she has actually paid the medical expenses she wants Corey to reimburse her for. In the 2010 modification, the trial court stated that a party seeking reimbursement "need not show that the bill has actually been paid, but need only show that the expense has been incurred." Corey argues that this is a departure from the original decree, which provided, "Each party who incurs medical expenses for the children shall provide written verification of the cost *and payment* of medical expenses to the other within thirty days of payment." (Emphasis added.) He also argues that this modification is contrary to Utah law, which mandates that "[a] parent who incurs medical expenses *shall* provide written verification of the cost *and payment* of medical expenses," Utah Code Ann. § 78B–12–212(8) (Supp.2011) (emphases added). To the extent that this new provision may be interpreted as completely relieving the parties of their statutory obligation to provide proof of payment to one another when they incur medical expenses for the children, we agree with Corey. However, we interpret this provision as not so much a modification of the decree as a statement by the court clarifying that reimbursement must

---

11. Nevertheless, a party may agree to pay child support in excess of the guidelines even if the trial court does not make a specific finding that such a deviation is warranted because a stipulation by the parties "has all the binding effect of findings of fact and conclusions of law made by the court upon the evidence." *Davis v. Davis*, 2001 UT App 225, ¶ 10, 29 P.3d 676 (internal quotation marks omitted). "[T]he stipulation constitutes an agreement of the parties that all the facts necessary to support it ... pre-existed and would be sustained by available evidence, had not the agreement of the parties dispensed with the taking of evidence." *Id.* (omission in original) (internal quotation marks omitted).

12. Lisa asserts that the trial court's order was also a remedy for the "financial strain" she suf-

fered as a result of Corey's bankruptcy. To the contrary, the trial court implied that the only remedy based on the financial effects of the bankruptcy was the modification of the income tax provision. Moreover, as noted above, the trial court failed to make any "specific finding" that the bankruptcy made "use of the guidelines ... unjust, inappropriate, or not in the best interest of the child," *see* Utah Code Ann. § 78B–12–112(3) (2008). And as with the income tax provision, any substantial change of circumstances arising from the bankruptcy that might have justified a deviation from the child support guidelines should have been addressed in the 2005 modification when child support was previously modified. *Cf. supra* ¶ 12.

be made with or without proof of payment, which is entirely consistent with the statute.

¶ 20 Our interpretation is consistent with the trial court's asserted intent in clarifying the medical reimbursement provision. It is clear from the transcript of the hearing that the court desired not to change the parties' statutory obligations but to find a means for encouraging the parties to be reasonable in approaching the reimbursement issue. The trial court explained,

> If you think you've sent enough, and he hasn't paid it, then what you need to do is an order to show cause to the commissioner saying, I gave him enough documentation.... [I]f you cause him to come out here and fight it, and the commissioner agrees with him that you didn't give enough documentation, then [the commissioner] may assess a sanction against you.
>
> On the other hand if you get documentation and you say its not enough, and she hauls you into the commissioner to say [you] should pay, and the commissioner agrees that the documentation was enough. Just the fact that you didn't think it was isn't going to cut it, and he's not only going to make you pay the bill, but he may award a sanction for you not paying it. So what I'm saying is we all need to be reasonable about this. If he says I need more documentation and [it's] not going to kill you to give it [to] him, then give it to him. On the other hand if she's giving you plenty—the point is it can't be just because you feel like it.... You just have to do your best to get along and provide the documentation.

¶ 21 While it would have been beyond the scope of the trial court's discretion to attempt to excuse Lisa's statutory obligation to provide proof of payment altogether, the trial court retains discretion to order one parent to reimburse the other for medical expenses incurred even when the parent incurring the expenses has failed to comply with his or her statutory obligation to provide verification of payment. *See id.* § 78B–12–212(9) ("[A] parent incurring medical expenses *may* be

denied the right to ... recover the other parent's share of the expenses if that parent fails to [provide verification]." (emphasis added)). We reject Corey's assertion that "a right to reimbursement arises only after [a parent] provides the proof of incurring, and paying, the bill [to the other parent]." The Utah Code does not condition the obligation to pay on verification of payment. Rather, as Lisa notes, the obligation to provide verification is "an independent duty" that is not a mandatory condition of reimbursement, although failure to comply with the condition may, in the trial court's discretion, be remedied by a denial of reimbursement. While Lisa risks sanctions or the possibility that she may be denied reimbursement if she fails to provide proof of payment, Corey also risks sanctions if he refuses to pay without receiving proof of payment, particularly if there is nothing to indicate that the bill has not been paid. Thus, it was not beyond the trial court's discretion to declare that Corey would be obligated to reimburse Lisa for the children's medical expenses in spite of her failure to provide proof of payment.[13]

## V.  Attorney Fees in the Trial Court

¶ 22 On cross-appeal, Lisa argues that the trial court failed to make necessary findings to justify its denial of her request for attorney fees. Utah Code section 30–3–3, which governs awards of attorney fees in divorce cases, provides that "the court may order a party to pay the costs[ and] attorney fees ... of the other party to enable the other party to prosecute or defend the action." Utah Code Ann. § 30–3–3 (Supp. 2011). "[T]o recover costs and attorney fees in proceedings on a petition to modify a divorce decree, the requesting party must demonstrate his or her need for attorney fees, the ability of the other spouse to pay, and the reasonableness of the fees." *Larson v. Larson*, 888 P.2d 719, 726 (Utah Ct.App. 1994). The trial court in this case declined to award Lisa her requested attorney fees because it concluded that "[t]he evidence at trial was insufficient for [it] to determine

---

**13.**  We reiterate, however, that Lisa is still statutorily obligated to provide Corey with proof of payment and that the trial court retains its dis-

cretion to deny reimbursement in the future if she is derelict in fulfilling that duty.

attorney fees ..., specifically, whether the attorney fees are related to the issues which have been adjudicated here." Lisa argues that the evidence was sufficient and that it supported an award of attorney fees. However, "[t]he decision to make ... an award [of attorney fees] and the amount thereof rest[s] primarily in the sound discretion of the trial court." *Bell v. Bell*, 810 P.2d 489, 493 (Utah Ct.App.1991). Although some evidence relating to the relevant factors was presented at the hearing—primarily information relating to the parties' incomes and their monthly needs, and invoices from Lisa's attorney—this evidence was minimal, and we cannot say that it was a clear abuse of the trial court's discretion to decline to address the attorney fee issue on the ground that the evidence was insufficient for it to make a determination.

### VI.  Attorney Fees on Appeal

¶ 23 Lisa also requests her attorney fees on appeal. "Generally, when the trial court awards [or should have awarded] fees in a domestic action to the party who then substantially prevails on appeal, fees will also be awarded to that party on appeal." *Kimball v. Kimball*, 2009 UT App 233, ¶ 52, 217 P.3d 733 (internal quotation marks omitted). However, Lisa has not substantially prevailed on appeal, nor have we determined that the trial court should have awarded her attorney fees below. Therefore, she is not entitled to an award of attorney fees on appeal.

### CONCLUSION

¶ 24 Because the income tax provision was modified in 2005 and the alleged change of circumstances, i.e., the bankruptcy, occurred prior to that time, we reverse the trial court's 2010 modification of the income tax provision. However, we affirm the trial court's child support order because Corey failed to preserve his arguments relating to that order.

Because the trial court failed to make any findings justifying a deviation from the child support guidelines, we reverse the trial court's order that Corey pay half of the children's school expenses in addition to child support. We affirm the trial court's order that the right to reimbursement for medical expenses is not contingent on receiving proof of payment but clarify that the parties' statutory obligation to provide one another with proof of payment remains in force. Finally, we affirm the trial court's denial of Lisa's request for attorney fees, and we deny her request for fees on appeal.

¶ 25 I CONCUR: MICHELE M. CHRISTIANSEN, Judge.

THORNE, Judge (concurring and dissenting):

¶ 26 I agree with sections II, IV, V, and VI of the majority opinion and concur therein. However, I cannot agree with the majority's conclusions that res judicata barred the district court from considering the effects of Corey's bankruptcy on Lisa and that Corey was improperly ordered to pay half of the children's reasonable school expenses. Neither of these issues was adequately preserved in the district court, precluding our review of them, but even if they had been preserved I cannot agree with the majority's substantive treatment of them. I would affirm the district court's 2010 modification order in its entirety, and I respectfully dissent from those portions of the majority opinion that reverse the district court's order.

¶ 27 As a preliminary matter, we should not address either the res judicata issue or the school expenses issue because Corey has failed to preserve these specific issues for appeal.[1] The preservation requirements set out by the Utah Supreme Court are clear:

[I]n order to preserve an issue for appeal[,] the issue must be presented to the trial

---

1. There may be preservation problems with Corey's other arguments as well. For example, as to the medical expenses reimbursement issue, the district court informed Corey at the hearing, "Your obligation, both of you, to pay half has nothing to do with the bill actually being paid. The obligation arises from the bill being in-curred." Corey raised no objection to this statement. Further, at no time did Corey direct the district court to the language of Utah Code section 78B–12–212 regarding "written verification of the cost and payment of medical expenses." *See* Utah Code Ann. § 78B–12–212(8) (Supp. 2011).

court in such a way that the trial court has an opportunity to rule on that issue. This requirement puts the trial judge on notice of the asserted error and allows for correction at that time in the course of the proceeding. For a trial court to be afforded an opportunity to correct the error (1) the issue must be raised in a timely fashion[,] (2) the issue must be specifically raised[,] and (3) the challenging party must introduce supporting evidence or relevant legal authority. Issues that are not raised at trial are usually deemed waived. *438 Main St. v. Easy Heat, Inc.*, 2004 UT 72, ¶ 51, 99 P.3d 801 (alterations in original) (citations and internal quotation marks omitted). Here, Corey did not raise the relevant issues with specificity, nor did he support his arguments with relevant legal authority.

¶ 28 As to the res judicata issue, I agree with the majority that Corey generally raised the concept of res judicata below by asserting that his bankruptcy had been discussed and ruled on in the 2005 trial. However, the district court made it quite clear that it was not relying on the fact that the bankruptcy had occurred but rather on the effects of the bankruptcy on Lisa's finances, effects that only occurred *after* the 2005 trial. Corey never alerted the district court to any argument that the future consequences were fixed at the time of the 2005 trial and therefore could have and should have been fully and fairly litigated at that earlier time.

¶ 29 Corey's school expenses argument was similarly unpreserved. Corey never informed the district court that an award of school expenses constituted an increase in child support under *Brooks v. Brooks*, 881 P.2d 955 (Utah Ct.App.1994), nor did he object to the district court's failure to enter specific findings justifying its departure from the child support guidelines, *see generally In re K.F.*, 2009 UT 4, ¶ 60, 201 P.3d 985 ("[A party] waive[s] any argument regarding whether the district court's findings of fact were sufficiently detailed when the [party] fails to challenge the detail, or adequacy, of the findings with the district court." (second

alteration in original) (internal quotation marks omitted)). In light of Corey's failure to preserve these issues, I would decline to address them. However, the majority opinion does reach the substance of these issues, and in each case reaches what I believe to be an incorrect conclusion.

¶ 30 The majority applies the general rule of res judicata to the district court's finding of changed circumstances based on the subsequent effects of Corey's 2003 bankruptcy. However, in light of the district court's "continuing jurisdiction to modify child support obligations," *Durfee v. Durfee*, 796 P.2d 713, 716 (Utah Ct.App.1990), a modification petition need not satisfy the normal rules of res judicata. Rather, a petitioner need only make "a showing of a substantial change of circumstances occurring since the entry of the decree and *not contemplated* in the decree itself." *Id.* (emphasis added) (internal quotation marks omitted); *see also Bolliger v. Bolliger*, 2000 UT App 47, ¶¶ 11–13, 997 P.2d 903.[2]

> "The fact that the parties may have anticipated [a substantial material change in circumstances] in their own minds or in their discussions does not mean that the [prior order] itself contemplates the change. In order for a material change in circumstances to be contemplated in a [child support order,] there must be evidence, preferably in the form of a provision within the decree itself, that the trial court anticipated the specific change."

*Bolliger*, 2000 UT App 47, ¶ 13, 997 P.2d 903 (first alteration in original) (quoting *Durfee*, 796 P.2d at 716). "Accordingly, if both the [prior order] and the record are bereft of any reference to the changed circumstance at issue in the petition to modify, then the subsequent changed circumstance was not contemplated in the [prior order]." *Id.*

¶ 31 I do not agree with the majority that the 2010 consequences of Corey's bankruptcy were foreseeable with a sufficient degree of certainty at the time of the 2005 trial. But even if they were foreseeable, they were not "contemplated" in the 2005 order because

2. This rule is "grounded in principles of res judicata." *See Bolliger v. Bolliger*, 2000 UT App 47, ¶ 11 n. 3, 997 P.2d 903.

"both the [prior order] and the record are bereft of any reference to" the likely effect of Corey's bankruptcy on Lisa's finances.[3] *See id.* Accordingly, the district court's decision that the bankruptcy's effects on Lisa constituted a substantial change in circumstances is not barred by the doctrine of res judicata and should be affirmed.

¶ 32 As to the district court's order that Corey reimburse Lisa for half of the children's reasonable school expenses, I agree with the majority that such reimbursement must be treated as additional child support for purposes of compliance with the child support guidelines. *See Brooks v. Brooks,* 881 P.2d 955, 959 n. 3 (Utah Ct.App.1994) ("[W]e believe the private school costs are part and parcel of the child support award and have found no authority to the contrary."). However, Utah's child support guidelines merely provide a "rebuttable presumption" of the proper amount of child support, *see* Utah Code Ann. § 78B–12–210(2)(a) (2008), and the presumption is rebutted by "[a] written finding or specific finding on the record supporting the conclusion that … ordering an award amount resulting from use of the guidelines would be unjust, inappropriate, or *not in the best interest of a child* in a particular case," *id.* § 78B–12–210(3) (emphasis added).

¶ 33 Looking at the totality of the circumstances of this case, it is clear to me that the district court acted within its discretion in implicitly concluding that limiting Corey's child support payment to the guideline amount would not have been in the children's best interests. The court found that Lisa's annual income was just $15,286, while Corey's was $74,980. The court also found that, due to Corey's bankruptcy, "creditors are now seeking to recover funds from [Lisa]," that the bankruptcy had "materially affected [Lisa's] financial condition," and that, as a result, Corey had "effectively taken from [Lisa] the benefit of her bargain in arriving at the stipulation which forms the basis of the original decree." The district court's clarification of Corey's duty to reimburse medical expenses also suggests that the court credited Lisa's testimony that Corey had delayed or refused to reimburse her for various medical expenses due to a documentation dispute. The school expenses that the district court awarded—lab fees, advanced placement fees, and other such education-related fees—are also clearly reasonable and appropriate. In light of the total picture presented to the district court in this case, it seems to me a fair inference that the district court looked at Lisa's financial condition, as worsened by Corey's actions, and determined that the children would likely be deprived of valuable educational opportunities if Corey's support amount was limited to the amount provided by the guidelines. Such a conclusion surely satisfies the statutory requirement relating to the best interests of the children.[4]

¶ 34 To the extent that an express finding that the guidelines do not adequately serve the children's best interests in this case is necessarily required by section 78B–12–210(3), the proper remedy for the district court's failure to make such a finding is not simply reversal, but reversal with remand for the entry of the requisite finding. *See Brooks,* 881 P.2d at 960. Although I do not believe that Corey preserved this issue, nor do I believe that the district's actual findings were inadequate, if we are to reach the issue then the district court should be allowed an opportunity to explain why it departed from the guidelines and required the shared payment of educational expenses.[5]

¶ 35 For these reasons, I would affirm the district court's order in its entirety. Accordingly, I dissent from the portions of today's majority opinion that reverse the district

---

**3.** The only reference to Corey's bankruptcy in the 2005 order is a statement that Corey had "received a discharge in bankruptcy in regard to the debts and obligations he was ordered to pay under the Decree of Divorce." *See supra* ¶ 12 note 5. There is no mention of the possible effects of the bankruptcy on Lisa.

**4.** A similar argument could likely be made that limiting Corey's support payment to the guideline amount would be "unjust" under the circumstances of this case. *See* Utah Code Ann. § 78B–12–210(3) (2008).

**5.** This is particularly true here, where any lack of adequate findings is the direct result of Corey failing to ask for them in the district court.

court on the res judicata and school expenses issues. I concur in the remainder of the majority opinion.